# Bowling v. Crook.

*Bill in Equity to enjoin Trespass on Land and cancel a Lease.*

1. *Injunction of trespass; jurisdiction of equity.*—A court of equity has jurisdiction to enjoin trespasses upon land, but this jurisdiction is not exercised, as a matter of course, upon the commission of a trespass, or when trespass is apprehended; and equity will not interfere unless the party complaining is in possession of the land under a clear legal title in himself, and the trespass is recurrent, continuous and would result in a multiplicity of suits.

2. *Same; same.*—A bill filed to restrain the commission of trespasses upon lands of the complainant, which avers the lease of the lands to the defendant for a number of years, the breach of the covenant of the lease by the lessee during the pendency of the lease, which entitled the lessor to re-enter, a re-entry by him, the refusal of the lessee to surrender possession, and a claim and purpose on his part to retain possession under the lease, but which alleges no facts showing why an action at law will not determine which of the parties has the right to possession, nor why such an action would not put an end to litigation, is without equity; and the mere averments in such a bill that irreparable damage will result to the complainant, and that injunction is necessary to prevent a multiplicity of suits, without averments of facts to support such conclusions of the pleader, are ineffectual to give equity to the bill.

3. *Breach of conditions of a lease; waiver thereof.*—The acceptance by a landlord of the rents accruing after the breach of the conditions contained in a lease, with full knowledge of the breach and of the circumstances attending it, is an affirmation that the contract of lease was still in force and was to continue for the time for which rent was paid and received; and the lessee can not be considered a trespasser during the time for which he paid rent.

4. *Same; same.*—Where, after the breach of the conditions contained in a lease, and with full knowledge of such breach the landlord modifies the lease so far as he covenanted therein to make advances

[Bowling v. Crook.]

to the lessee for a certain year, and the lease in all other respects remains the same, such modification is an affirmance by the landlord of the existence of the lease at that time, and constitutes a waiver of the forfeiture and right to re-enter for the breach of the covenants of the lease prior to the execution of such modification.

5. *Same; same.*—Where the landlord, with full knowledge of the breach of the conditions contained in the lease, accepts corn in payment of the rent due under the lease, without objection, he can not, afterwards, insist on forfeiture of the lease on account of the character of the corn.

APPEAL from the Chancery Court of Calhoun.
Heard before the Hon. S. K. McSPADDEN.

The bill in this case was filed on January 10, 1894, by the appellee, Jane P. Crook, against the appellant, George W. Bowling; and prayed for an injunction against the defendant, restraining him from trespassing upon the lands of the complainant, and also for the cancellation, as a cloud upon her title, of the lease made by her husband to the defendant. The grounds upon which the relief prayed for is based, is the breach of the conditions of the covenants of the lease by the defendant. The breaches complained of, as set forth in the fifth paragraph of the bill, are as follows: ''Complainant avers the fact to be that the said Geo. W. Bowling, as above stated, has failed to carry out fully the obligation assumed by him as shown in said lease contract and set out in the fourth paragraph of this bill, in the year 1893, as he failed in the year 1892, before a modification of said lease was made, as herein stated. The said Bowling has not cultivated the lands leased to him after the most approved and progressive methods of agriculture, in that he has not cultivated but about one-half of the arable lands leased to him, but has let from seventy-five to one hundred acres of the lands, which were in cultivation when the farm was leased to him, lie uncultivated and grow up in sprouts, weeds and other wild noxious growth, and most of that part which was planted in corn by said Bowling was poorly planted and poorly cultivated—was broken up in May and June, 1892, with a cut-a-way or dise harrow, the rows laid off alternately four and three feet wide, and the corn was planted in said rows on an average, about fourteen (14) inches from hill to hill or stalk to stalk, and planted in June and poorly cultivated. That said Bowling has not kept in good

repair the fences as he agreed to in said lease,
nor has he kept in repair the tenant houses. He has not
taken good care of said mules, in that, in the fall and
early winter of 1893 he had used them in turning, with
heavy two horse plows, the heavy, tough bottom land on
the farm of one A. W. Ledbetter, which said Bowling has
leased since he leased oratrix' farm, some of which has
been lying out uncultivated for years, and one of said
mules has received an injury from said Bowling or
his employés, and has been under veterinary treat-
ment for several weeks, with little hope or prospect of
permanent cure. He has not turned more than six (6)
acres of the land leased by him, but he has used ora-
trix' mules in turning the Ledbetter land. Oratrix
avers that he has not taken any care of said ensilage cutter,
thresher and blacksmith tools; that the thresher has
been exposed to the weather for a year, and the black-
smith tools have been exposed to the weather for some
time, and have been badly damaged, and some of the
tools lost; that said Bowling has failed to raise and un-
derwall the said large manure shed or to intimate a wil-
lingness or intention to carry out this part of his obliga-
tions, although the said James Crook has insisted upon
the same being done and expressed a readiness at any
time, to furnish the necessary cement. The said Bow-
ling has also failed to fill the three large silos as agreed
by him to do, in this, that he has failed to fill them by
from two and one-half to three feet, and what corn he
has put in them has not been 'good, sound, heavy corn'
as agreed upon, but such corn as was gathered from a
field poorly prepared and poorly cultivated, with rows
three and four feet apart, alternately, as stated above,
and corn planted in said rows on an average of not ex-
ceeding fourteen inches from hill to hill or stalk to stalk,
and the fodder on the corn or stalk cut and put in said
silos was not green, but on account of close planting,
poor preparation and bad cultivation; was fired · or
burned, on most of the stalks, nearly up to the ear    That
said Bowling in order to fill said silos, as contemplated
and understood by him in accordance with the terms of
said contract, would have been compelled to put in them
from eight hundred to one thousand bushels of good,
sound, heavy corn, but as filled by him, he has not put
in them more than three hundred bushels of light corn,

[Bowling v. Crook.]

and although he gave the said Crook a lien in said lease
contract on all the crops raised by him on said lands,
has removed the same, without paying or offering to
pay the rent due in the difference between the value of
the silos, as filled by him, and their value as he obliga-
ted himself to fill them, leaving a balance due on said
difference of three hundred and fifty dollars, reasonably
estimated." The other facts of the case are sufficiently
stated in the opinion.

The present appeal is prosecuted by the respondent,
who assigns as error the decree of the chancellor overrul-
ing his motion to dismiss the bill for the want of equity,
and his motion to dissolve the injunction.

MATTHEWS & WHITESIDE, for appellant.—1. The bill
does not allege facts which show that the alleged tres-
pass complained of is of a character that would be de-
structive of the property, or would cause an irreparable
injury, incapable of compensation in money, or that
shows the inadequacy of the legal remedy. The utmost
it shows is a breach of contract. This is not sufficient.
" Mere allegations of irreparable injury will not suffice,
but the facts which go to constitute such injury, must be
shown."—3 Wait's Ac. & Def., 685, §§ 8, 9 ; 695, § 7 ;
Boyey v. Shute, 1 Jones, (N. C.) Eq. 180. " Equity will
not depart from the well settled rule of leaving the par-
ties to their remedy at law for acts of trespass com-
mitted on lands, unless there are some special circum-
stances set up in the bill, and where it is not shown that
the remedy at law is inadequate." There are no special
circumstances set up in the bill, which take the case out
of the general rule.—1 High on Injunctions, (2 Ed.), §
713 ; Thomas v. James, 32 Ala. 723 ; Brooks v. Diaz, 35
Ala. 599 ; Jerome v. Ross, 7 John's Ch. 315 ; Haines v.
Hall, 3 L. R. Anno., 609.

2. Neither is the bill maintainable on the theory that
it is necessary to avoid a multiplicity of suits. Com-
plainant had not established her right at law, by so much
as one verdict or judgment in her favor, and her posses-
sion is denied and her right to the possession is disputed
between her and the appellant only and for themselves
alone.—Jerome v. Ross, 7 John's Ch. 315 ; Nevitt v. Gilles-
pie, 1 How. (Miss.) 108 ; Moses v. Mayor, 52 Ala. 198 ;
Ashurst v. McKenzie, 92 Ala. 484 ; 1 High on Injunc., §

700; Pomeroy's Eq. Jur., §§ 252, 263, 267; *Troy &c. R. Co. v. Boston &c. R. Co.*, 86 N. Y. 107.

3. As before suggested, appellee's right to the possession is not only disputed, but it is also denied in the answer that she has the possession of the premises and clearly her remedy is in a court of law.—*Brown v. Brown*, 68 Ala. 116. "Equity should not interfere by injunction where the right is doubtful, or the investigation of a jury as to facts in dispute is required."—*Roath v. Driscoll*, (Conn.) 52 Amer. Dec. 352; High on Injunctions, § 701; *Delkyn v. Davis*, Hopkin's Ch. 132, 141; *Swan L. Co. v. Frank*, 148 U. S. 603; 3 Wait's Act. & Def., 701; Pom. Eq. Jur., §§ 252, 267.

4. Manifestly the object of the suit is to enforce an alleged forfeiture and to recover the possession of land, and the remedy at law is adequate, or at least is not shown to be inadequate. Equity then should not interfere. " It never lends its aid to divest an estate for the breach of a condition subsequent, nor will it assist the recovery of a forfeiture or anything in the nature of a forfeiture.—*Curry v. Peebles*, 83 Ala. 225; *Tyson v. Brown*, 64 Ala. 248; 1 High on Injunctions, §§ 713, 715; 2 Story's Eq. Jur. (12 Ed.), § 1319; *Baxter v. Lansing*, 7 Paige 350; 1 Pomeroy's Eq. Jur., § 459. " Relief by injunction will be denied the landlord in cases where full redress may be had at law, and the fact of a tenant holding over after the expiration of his lease will not warrant relief in equity by injunction, when no reason is shown why resort is not had to the legal remedy by forcible detainer or ejectment, and equity will not interfere in such cases by injunction to determine the right and title of the parties, but will leave them to be determined at law."—1 High on Injunc. (2d. Ed.), §§ 432, 715.

S. D. G. Brothers, *contra*:—1. It is a well established principle of equity, that repeated and continued trespasses, made or threatened, on land, to prevent irreparable damage and a multiplicity of suits will be enjoined.—3 Pomeroy's Eq., § 1357 and note; 2 Story's Eq., §§ 928–9; *Boulo v. N. O., M. & T. R. R. Co.*, 55 Ala. 480; *Sullivan v. Rabb*, 86 Ala. 433; *Ashurst v. McKenzie*, 92 Ala. 484; *Mills v. N. O. Seed Co.*, 7 Amer. St. Rep. 671, and note; *Musselman v. Marquis*, 89 Amer. Dec. 637; *Gause v. Perkins*, 69 Amer. Dec. 723; *Allen v.*

*Martin*, L. R. 20 Eq. 462 ; *Carpenter v. Gwynn*, 35 Barb. 395 ; *Martyr v. Lawrence*, 2 De. Gex., J. & S. 261–271 ; *Wheelock v. Noonan*, 2 Amer. St. Rep. 405 ; *Shepherd v. Manhattan Ry. Co.*, 117 N. Y. 442 ; *Lynch v. Met. E. Railway Co.*, 26 Amer. St. Rep. 533 ; *Garwood v. N. Y. C. & H. R. R. R. Co.*, 38 Amer. Rep. 452 ; *Indian River Steamboat Co. v. East Coast Transp. Co.*, 29 Amer. St. Rep. 258 ; *Nininger v. Norwood*, 72 Ala. 277.

2. On motion to dissolve the injunction for want of equity in the bill. all amendable defects should be regarded *pro hac vice* as amended.—*E. & W. R. R. Co. v. E. T. V. & G. R. R. Co.*, 75 Ala. 276 ; *Chambers v. Alabama Iron Co.*, 67 Ala. 353.

3. The dissolution of an injunction is largely a matter of judicial discretion, and does not follow as a matter of course upon the coming in of a sworn answer denying the allegations of the bill. The court may continue the injunction when circumstances seem to demand this course.—*Bibb v. Shackelford*, 38 Ala. 611 ; *Chambers v. Ala. Iron Co.*, 67 Ala. 353 ; *Davis v. Sowell & Co.*, 77 Ala. 262 ; *Harrison v. Yerby*, 87 Ala. 185 ; *Porter v. Jennings*, 89 Cal. 440 ; *P. & M. Bank v. Laucheimer*, 102 Ala. 454.

4. Where two are in possession, the seizin follows the title, and there can be no disseizin, unless the rightful owner is altogether deprived of possession. If the appellee rightfully re-entered under the broken covenants of the lease, then Bowling is a trespasser.—Tiedeman on Real Prop., § 698 ; Sedgewick & Wait's Tral of Titles to Land, § 753.

5. Where the answer denies all the material allegations of the bill without evasion or equivocation, it is left to the sound discretion of the court as to whether the temporary injunction will be dissolved. Where to dissolve the injunction is to permit all other acts and conduct causing the irreparable damage and injury to be carried out by the defendant, the injunction will not be dissolved on the sworn answer of the defendant denying all the equities of the bill, but will be retained until the hearing. And again : Where the injunction is not merely ancillary to some other principal relief desired, (as in this case), and its dissolution would be equivalent to a dismissal of the action, if a reasonable doubt exists in the mind of the court whether the bill is sufficiently negatived in the answer, it is proper to re-

fuse a dissolution, and to continue the injunction to the hearing.—*Davis v. Sowell & Co.*, 77 Ala. 262; *Bibb v. Shackelford*, 38 Ala. 611; *Chambers v. Alabama Iron Co.*, 67 Ala. 353; *Rembert v. Brown*, 17 Ala. 667; *Kinney v. Ensminger*, 87 Ala. 340; *Cartwright v. Bamberger*, 90 Ala. 405; 2 High on Injunctions, §§ 1598–1603.

COLEMAN, J.—The main purpose of the bill is to obtain an injunction, restraining the appellant Bowling from trespassing upon the lands of complainant. On the 1st day of January, 1892, James Crook, husband of complainant, by written agreement signed by himself and lessee, leased to respondent, Bowling, for a term of five years, certain lands. The lease contract contains mutual covenants, and stipulates among other things for the payment of an annual rent, and provides that, "for a failure to perform and carry out fully the obligations assumed by said Bowling in this contract of lease, the said Crook shall have the power and authority to re-enter on said leased premises, and enjoy the same as if no lease had been made." On the 24th day of February, 1893, the written lease was modified, in writing, so far as James Crook had covenanted to make certain advancements in money to the lessee, Bowling, for that year, but in all other respects, the lease contract remained the same.

The bill was filed January 10th, 1894, and charges that the lessee, Bowling, "has failed to carry out fully the obligation assumed by him as shown in said lease contract." The covenants of the lessee are successively stated in the bill, each followed by an averment of non-compliance by the lessee, and in some instances facts are stated to show in what respect the covenant of the lessee was violated. The bill avers a re-entry of the leased land by James Crook as provided for in the lease, his possession under the re-entry, and notice to Bowling not to trespass on the lands, the refusal of Bowling to keep off the premises, and his avowed purpose to cultivate the lands, in disregard of complainant's right under the declared forfeiture and re-entry. A temporary injunction issued as prayed for in the bill. The bill avers that relief by injunction is necessary to prevent irreparable injury, and multiplicity of suits. The respondent filed a sworn answer, and submitted a motion to dismiss the

bill for want of equity and also a motion upon the answer to dissolve the injunction. These motions were severally overruled by the chancellor, and respondent appealed. We should have stated that the bill also prays for a cancellation of the lease made by her husband, James Crook, as a cloud upon her title.

In the brief of counsel for appellee it is argued, that James Crook was not authorized in writing by complainant, to make a lease of the lands for a term of five years, and therefore the contract was void under the statute of frauds. Whether the contract in the present case, even though entered into by James Crook without written authority, can be taken from under the influence of the rule declared in the case of *Shakespeare v. Alba*, 76 Ala. 351, and others, in which it was held that the statute of frauds had no application to a lease contract for a term of years, which provided for the payment of rent in instalments, and the lessee was placed in possession of the rented premises, and the landlord accepted payment of the rents, we deem it unnecessary to decide. This question does not arise under the pleadings in this case. The bill expressly avers that the contract was made by "her husband, James Crook, acting for her and in her behalf," and it further avers that "James Crook, her husband, has complied in full with every duty and obligation assumed by him in said contract." The rights of complainant are based strictly upon a breach of the covenants by the lessee, and the right to re-enter and re-entry by her husband for broken conditions as provided in the lease. There is not a hint in the bill that James Crook was not legally authorized to make the contract, nor an intimation that it is or was ever repudiated by her.

The law is settled in this State that courts of equity have jurisdiction to enjoin trespasses upon land, but this jurisdiction is not exercised as a matter of course when a trespass has been committed by one person upon the land of another or such a trespass is apprehended. If it appears that the rights involved are wholly legal, it must be shown that the remedy at law is inadequate. Equity will interfere, when the trespass is recurrent, continuous, and to avoid a multiplicity of suits, and the title to the land is admitted, or is clearly in the plaintiff.—1 Pom. Eq., §§ 252, 255; *East & West R. R. Co. v. East Tenn. Va. & Ga. R. R. Co.*, 75 Ala. 275; *Nininger*

*v. Norwood*, 72 Ala. 277 ; *Boulo v. New Orleans, M. & G. R. R. Co.*, 55 Ala. 480 ; *Sullivan v. Rabb*, 86 Ala. 433 ; *Ashurst v. McKenzie*, 92 Ala. 484.

Equity will interfere to enjoin repeated actions in ejectment, after there has been one or more trials at law; but the remedy by injunction will not be granted in the first instance, in the absence of some equitable grounds, where the title is disputed, and depends upon the settlement of facts which are controverted. The remedy by injunction can not be substituted for ejectment or unlawful detainer. The bill shows a case of leasing for five years, a breach of covenant by the lessee during the term of the lease which entitled the lessor to re-enter, a re-entry by him, and the refusal of the lessee to yield possession, and a claim and purpose on the part of the lessee to retain possession of the land under the lease. This is the continued trespass complained of, and the basis for the multiplicity of suits. It does not appear why an action of ejectment, or of unlawful detainer, will not determine which of the parties have the legal right to the possession, nor why such an action will not put an end to litigation. Mere averments that irreparable damage will result, or that a bill in equity is necessary to prevent a multiplicity of suits will not avail the pleader unless supported by proper charges of facts.— *Kellar v. Bullington*, 101 Ala. 267.

There is another objection to the bill. It is averred that the breaches of covenant by the lessee, upon which the forfeiture is claimed, occurred in the years 1892 and 1893. So far as the breaches complained of occurred in the year 1892, there was an express waiver, by the subsequent reception of the rent for that year, and the modification of the lease in February, 1893, and its re-affirmance in all other respects. As to the breaches of covenant which it is averred occurred in the year 1893, no particular time is mentioned. The lease provides that the land shall be cultivated "after the most approved methods of agriculture." What constitute "cultivation after the most approved methods" presents questions of fact, about which we presume there will be much contrariety of opinion. The lease provides that the lessee "shall fill three large silos, closely packed, with good, sound heavy corn in the fall of each year," and "in the fall or early winter of each year to gather and store in said

crib one thousand bushels of good, sound dry corn." In *Brooks v. Rogers*, 99 Ala. 433, it was decided, "that acceptance by a landlord of rent accruing after breach of a condition containd in the lease, with full knowledge of the breach and all the circumstances, is a waiver of the right to declare a forfeiture of the lease, and re-enter on the premises." The same rule was declared in *Dahm v. Barlow*, 93 Ala. 120. A lessor can not affirm a contract of lease so as to receive the benefits of its covenants and afterwards declare a forfeiture for breach of conditions, and hold the lessee liable as a trespasser during the same period for which he collected rents; nor could he receive corn in payment of the rent under the lease, without objection, with knowledge of its condition, and after getting the corn declare a forfeiture because of the character of the corn.

The bill in its present shape is without equity. It may be amended, so as to give it equity, and the complainant may be able to show that the method of cultivation by the lessor, if continued, will cause irreparable damage to complainant's land, or that such consequences will result from his neglect to comply with other covenants of the lease. There is no provision in the lease which compels the lessor to cultivate the "mountain field" in corn, or to distribute the manure over all the lands leased. The breaches complained of are set out in the 5th paragraph of complainant's bill. The answer contains a sufficient denial of each and every averment of the breach of covenants therein made, and then avers, affirmatively, facts, not in avoidance, but which, if true, are a denial of the truth of the averments of the bill. It denies that complainant is in possession of the leased lands, or has been in possession since the occupancy by the lessee under the lease.

Under the pleadings the injunction should have been dissolved. An order will be here made to that effect.

Reversed, rendered in part, and remanded.

HARALSON, J., not sitting.