# Birmingham Traction Co. v. Sou. Bell Telephone and Telegraph Co.

*Bill in Equity for Injunction.*

1. *Concurrent use of streets for quasi public improvements.*—An electric street railway company, having a right to the use of the streets of a city, equal, but not superior, to the right of a telephone company to a similar use of the streets, is bound to exercise reasonable care in constructing its works, and is liable to the telephone company for damages resulting from the negligence of the street railway company.

2. *Damnum absque injuria.*—Whatever incidental annoyance or injury may result from the rightful and lawful use of the streets, with no want of care for the rights and interests of others entitled to like use, is *damnum absque injuria*.

3. *Injunction for abuse of franchise.*—To entitle the party injured to an injunction, there must be more than merely incidental damages, there must be damages so continuous and recurrent as to be irreparable, and growing out of conduct in the nature of an abuse of the franchise.

4. *Case at bar.*—If an electric street railway company, in erecting

its poles and wires along the streets of a city already occupied by a telephone system, so construct same as to touch and cross the wires of the telephone company, and so as to cross-circuit and ground the wires of the latter, and thus prevent the use of the telephone wires by subscribers, and on complaint being made to the general manager of the electric railway company he refuses to right the wrong, and threatens to tear down the wires and poles of the telephone company unless the latter removes them, such conduct is an unwarranted usurpation, amounting to a trespass, and tending to a multiplicity of suits, which a court of equity will interfere by injunction to prevent.

5. *Abuse of franchise; injunction.*—A court of equity will grant an injunction to control quasi-public corporations, and keep them in the line of their authority and subject to law, in order to prevent unlawful usurpation, to the detriment of public and private rights.

APPEAL from Jefferson Chancery Court.

Tried before Hon. THOMAS COBBS.

The facts alleged in the bill so far as is necessary to set them out for a proper understanding of the case are, that the appellee, complainant below, is a duly organized and incorporated company, with full authority under its charter, to own, build, and construct lines of wire and poles for telephonic and telegraphic purposes, and that it now owns and is operating, and has for a long time—for ten years or more—owned and operated with full power and authority to do so, in and around the city of Birmingham, Alabama, along streets and avenues in said city which are specifically named, a system of telephone service, which requires poles and wires for its operation.

It also avers, that the defendant, the Birmingham Traction Company, the appellant in this court, a corporation organized under the laws of Alabama, is operating a street railroad along the streets and avenues along which the complainant is operating its telephone lines, which street railroad is run by steam power; that it has been informed, and upon information and belief states, that the defendant proposes to convert its street railroad into a road on which its cars will be propelled and operated by electricity, instead of by steam power, by which the same is now being operated; that defendant will be compelled, in the operation of a street railroad

propelled by electric power, to erect and construct poles and wires all along said streets and avenues, along which complainant's telephone lines are being operated, and that defendant has a large force of men engaged in erecting such poles, wires, etc.; that the poles upon which defendant proposes to stretch its wires, are placed in such a manner as that the stringing and stretching of the wires upon said poles, will greatly injure and damage complainant in the exercise and enjoyment of its franchise; that the complainant has already been injured and damaged by defendant's wires, which have been constructed on parts of said streets and avenues, and that the stretching of said wires along said streets and avenues upon the poles of defendant, as they are now placed, will irreparably injure and damage complainant by crossing and short circuiting or grounding complainant's wires, so that it cannot carry on its business; that such short circuits or grounded wires will greatly interfere with and damage its telephone subscribers whose connections are on such streets and avenues. It is further alleged, that defendant is putting up its said poles and wires in a manner contrary to law and public policy, to complainant's great damage as aforesaid, in this, that defendant is placing its wires at such height that they sometimes are over and sometimes are under complainant's wires, and in passing or crossing complainant's wires, they touch and rub up against them and thereby interrupt and cut off the electric current, so that messages cannot be sent over complainant's wires; that complainant called on the general manager of defendant, and called his attention to the fact that defendant's said poles and wires were so constructed that they short-circuited and grounded complainant's telephone wires, so that it cannot carry on its business, and requested him to correct the wrong; and said manager, in very coarse and emphatic language, said that defendant would not correct it, and if complainant did not do it itself, defendant would tear up complainant's wires and poles. Complainant further alleges that it is the duty of the last party putting up electric wires along, by, or across other electric wires, to so place its wires as not to injure the said wires which are already up; that there is an ordinance of the city of Birmingham, which the defendant has been and is now violating

to complainant's irreparable injury, which is as follows:
"Whenever it is necessary for any electric light, power
or trolley wires to be run under telegraph, fire alarm or
telephone wire, permission shall be granted to so do,
but the company running such wire or wires shall pay
the expenses of raising the other wires, if already un-
lawfully constructed, so that said wires shall not be
less than five feet above said electric light, power or
trolley wire, to make them entirely safe; and whenever
any telegraph, fire alarm or telephone company wishes
to stretch wires above any electric light, power or trol-
ley wire, they must cross not less than five feet above
said wires. The guard above each trolley wire must
consist of two wires not less than No. 10 gauge, and be
tightly strung not less than two feet above said trolley
wire, and twelve inches on each side; but strung on poles,
center street construction, one guard wire shall suffice.
The cost of such guard irons or change of poles shall be
borne by the person or company making the last con-
struction." It is also averred upon complainant's infor-
mation and belief, that defendant has no power or
authority under its charter to build, own and operate
street railroads in the city of Birmingham, propelled by
electricity. The bill was demurred to on various grounds
questioning its equity. A motion was also made to dis-
miss it for want of equity, and to dissolve the injunction
for want of equity in the bill and on the demurrer
thereto. The demurrer was overruled, and the motions
to dismiss and dissolve the injunction were, respect-
ively, overruled. The errors assigned are the refusal of
the court to dissolve the injunction. The injunction
prayed for, granted and continued, was one, restraining
and enjoining the defendant, its officials and agents
from constructing its line of poles and wires on and
along said streets and avenues, as set out in the bill, in
a manner to interfere with, hurt, harm or injure com-
plainant's said telephone property, service, wires and
poles.

ALEX T. LONDON, and JOHN LONDON, for appellant.
That a motion to dissolve an injunction can be based on
want of equity in the bill, or on the demurrer, see
*Bishop v. Wood,* 59 Ala. 253; *Satterfield v. John,* 53 Ala.
127; *Hart v. Clark,* 54 Ala. 490; *Chambers v. Alabama*

*Iron Co.,* 67 Ala. 353. Irreparable injury is a conclusion of law and the facts showing it must be alleged. High on Injunctions, S. 722; *Bolling v. Crook,* 104 Ala. 130, 138; *Kingsbury v. Flowers,* 65 Ala. 486; *Bank v. U. S. Loan Co.,* 104 Ala. 297, 302; *Kellar v. Bullington,* 101 Ala. 267; 20 Am. & Eng. Encyc. of Law, 163; 10 *Ib.* 836. To authorize injunction complainant must show that it has used reasonable care to protect itself or that injury was not preventable by reasonable effort on its part.—25 Am. & Eng. Encyc. of Law, 764, 766, and notes; *Cumberland T. & T. Co. v. Elec. Ry,* 42 Fed. 273. Something more than mere incidental damage must be shown; something in fact, in the nature of an abuse of the franchise, to entitle party injured to an injunction. *Cumberland Tel. & Tel. Co. v. U. S. Elec. Ry. Co.,* 42 Fed. 273. Where the cause resolves itself into a question of liability for certain damages sustained by complainant, a court of equity will not lend its aid.—*Cumberland Tel. & Tel. Co. v. U. S. Elec. Ry. Co., supra.* The franchise of respondent to construct its plant will be presumed.—*Con. El. Co. v. Peoples Company,* 94 Ala. 372. The court will consider the relative inconvenience. *C. & W. R. R. v. Witherow,* 82 Ala. 190; *Harrison v. Yearby,* 87 Ala. 185, 189; *Clifton Company v. Dye,* 87 Ala. 468, 471; *Whitley v. Dunham Company,* 89 Ala. 493, 497; *H. A. & B. R. R. v. B. U. Ry. Co.,* 93 Ala. 505; *W. Ry. of Ala. v. A. G. T. R. R.* 96 Ala. 272, 283.

WALKER, PORTER & WALKER, *contra.*—Under the facts averred in the bill, appellant should be restrained by injunction from so constructing its line of poles and wires along said streets and avenues as to interfere with, hurt, harm, or injure appellee's telephone property, service, wires, and poles.—*East & West R. R. Co. of Ala. v. E. T., Va. & Ga. R. R. Co.,* 75 Ala. 275; *H. A. & B. R. R. Co. v. Matthews,* 99 Ala. 24; *Columbus & Western Ry. v. Witherow,* 82 Ala. 190; *H. A. & B. R. R. Co. v. F. Co.,* 113 Ala. 239.

HARALSON, J.—(After stating the case as above.) We do not understand it to be insisted in this case, that the Telephone Company has the exclusive right to the streets and avenues of the city of Birmingham for the

purpose of operating its telephone system. No company, under ordinary circumstances, can assert and maintain a right to the exclusive enjoyment of a public street. Such a monopoly the law does not favor. Counsel for appellee, in their written brief, say that "it does not seek to enjoin appellant from constructing its electric street railway, but simply asks that appellant be restrained from so constructing its lines of poles and wires on and along said streets and avenues, as to interfere with, hurt, harm and injure appellee's property, service, wires and poles." Nor, again, do we understand the contention of appellee to be, that a telephone company can maintain a bill for an injunction against the operation of an electric railway, to prevent damages incidentally sustained by the escape of electricity from its rails and wires. It is probably true, that two electric systems of the kind could not be constructed in and operated along the same street—unless it was of uncommon width—without inflicting some incidental injury or damage, the one to the other. In the present state of electrical science, one would not be authorized to be very definite or emphatic in his conclusions touching such matters. However that may be, it may be safely stated, as applicable to all conditions, that no one public corporation of the kind should be given a monopoly to the exclusion of others in the use of the streets of a city. Ordinarily, such privileges should be granted, equal with and not superior to other like enterprises established for the use of the public. The State licenses such enterprises, not simply that the owner of them may earn profits by establishing and operating them, but that the general public as well may enjoy the benefits of their existence; and when two are authorized by law to use the same street or avenue, it should be with the express or implied condition, that each shall respect the rights and interests of the other, and occasion no unnecessary harm the one to the other. The matter of the regulation of such public corporations are usually committed to the municipalities where they are established, and in the case before us, it is certainly true, that the regulation of the two corporations pertain to the municipal government of the city of Birmingham.

The matter of dispute between them, as disclosed by the bill, demurrers thereto and motion for its dismissal,

and the argument of counsel here for appellee, seem to suggest some superior rights in the appellant company over the rights of the appellee company in the use of the streets and avenues of the city of Birmingham, along which the appellee has been for so long a time operating its telephone system, by the authority, it is to be presumed, of said city. There is no suggestion in the bill, however, that this authority to the appellee is exclusive. The bill does allege that the municipal government of Birmingham has an ordinance, set out in the statement of facts, which seems to have been adopted for the purpose of preventing just such contentions and difficulties as those presented in this case, which ordinance, it is alleged, the defendant has been and is now violating, to the injury of complainant. If this be true, as it must be on the trial of this case, on the facts alone alleged in the bill—and, if it is also true, as alleged, that complainant, before filing this bill, went to see the general manager of defendant, and calling his attention to the fact that his company was constructing its poles and wires in a way, as set out in the bill, to prevent complainant from carrying on its business, and that said manager in emphatic language replied that defendant would not correct the abuses complained of, and notified complainant that if it did not itself correct these troubles, defendant would tear up complainant's wires and poles—there arises what appears to be an unwarranted usurpation of right and power by defendant, denying to complainant anything like an equal privilege to the enjoyment of said streets with the defendant. The complainant had for about ten years, been operating its telephone system, under full authority to do so, as is alleged, and was the first comer to occupy the streets. While (whether) such prior occupancy, we deem is unnecessary to decide, conferred superior privileges, it may certainly be considered, in denial of defendant's alleged usurpation of superior rights in said streets and avenues.

For the purposes of the case, if conceded that defendant, in operating its electric railroad, had a right to use the streets of said city, equal, in all respects, to the right of complainant to the enjoyment of the same for the purpose of its telephone system, which is as much as defendant may claim, the concession would put the

two companies towards each other in the legal attitude
of using, each, in a sense, its own property, calling for
the application of the old and just and universally ac-
cepted rule, that every person is bound to the exercise
of reasonable care in the use of his own property, and
for any default in that particular, he is liable to the
person injured in an action of damages resulting from
his own negligence; or, to state the same rule somewhat
differently, it is nowhere denied, that "if one do a law-
ful act upon his own premises, he can not be held re-
sponsible for injurious consequences that may result
from it, unless it was so done as to constitute actionable
negligence;" and whatever annoyance or injury may re-
sult to one person from the rightful and lawful use of
his property—which implies no want of care for the
rights and interests of others—it is *damnum absque
injuria.* In conformity with these principles, it has been
stated by high authority, in a case similar to the one in
hand, to be "well settled so far as persons operating
under legislative grants are concerned, that something
more than incidental damage to another must be proved
—something in fact in the nature of an abuse of the
franchise—to entitle the party injured to an injunc-
tion.—*Cumberland T. & T. Co. v. U. S. Elec. Co.,* (Ct. Ct.
M. D. Tenn., opinion by Justice BROWN), 42 Fed. Rep.
273. See, also, 25 Amer. & Eng. Encyc. of Law, 764-767.

The contention of appellant, that the court below
erred in overruling the motion to dissolve the injunc-
tion, proceeds upon the assumption, that there is no
equity in the bill, as appears on its own allegations. It
may be admitted, that a mere allegation of irreparable
injury without a statement of facts to show such injury,
is a mere conclusion, and can not be made the ground
for granting an injunction. The facts in this case, to
show such alleged injury are fully set out. Whether
they are fully enough averred or not, we will not now
discuss. That they show injury to complainant of a
serious character is manifest. The right in complainant
to use the street, cannot, under the allegations, be de-
nied. The conduct of defendant, as shown, is an unwar-
ranted usurpation, amounting to a trespass on com-
plainant's rights, which is recurrent, continuous and
tending to a multiplicity of suits. This, a court of

equity will interfere by injunction to prevent.—*Bowling v. Crook*, 104 Ala. 130.

Moreover, the authority of an equity court to grant and maintain this injunction, may be rested on that other ground of chancery jurisdiction, that such courts will interfere to control such corporations as these, to keep them within the line of their authority and subject to law, in order to prevent such usurpations and damages as are here complained of.—*E. & W. R. Co. v. E. T., V. & Ga. R. Co.*, 75 Ala. 275; *H. A. & B. R. R. Co. v. Matthews*, 99 Ala. 24; *Railroad Co. v. Witherow*, 82 Ala. 190; *M. & M. R. Co. v. Ala. M. R. Co.*, 23 So. Rep. 57.

The damages to complainant in this case as shown, are not incidental, growing out of a careful and lawful use of the streets and avenues by defendant, and such as are *damnum absque injuria;* but they arise from the misconduct of defendant in the nature of an abuse of its franchise. These damages the defendant might, as appears, avoid, but which it without reason claims the complainant was under obligation to remove.

If the facts of this case as averred are true, as the demurrer and motion to dismiss admit, it is difficult to see why the bill does not contain equity. There was no error in refusing to dissolve the injunction.

Affirmed.