# Montgomery Light & Water P. Co. v. Citizens L. H. & P. Co.

## Bill for Injunction.

(Decided April 20th, 1906. 40 So. Rep. 981.)

1. *Pleadings; Conclusions.*—The grounds of relief averred in the bill, and on which an injunction is sought to restrain one light company from stringing wires upon a pole belonging to the other light company, are that there has already been strung on said pole all the wires it would bear with safety to its service and security to the people, and that notwithstanding this fact and the further fact that the ciy ordinances forbade defendant from interfering with poles and wires of complainant, defendant is attempting to string and is stringing its wires on the pole, and unless interfered with would so string its wires as to result in irreparable damage to complainant, and render the pole absolutely dangerous to the lives of people walking on the street; and in addition make it impossible for complainant to attend to securing its own wires on the pole, endanger the lives of its employees, who are frequently compelled to climb the pole to repair complainant's wires, and prevent it furnishing current for lights to the people. Neither the size or capacity of the pole, the number of wires strung thereon, the proximity of the wires to each other, nor their location is alleged. Held, mere conclusions and subject to demurrer.

2. *Injunction; Dissolution; Grounds.*—Considering the averments of the bill together with the denials and averments of the answer, it is held that the preliminary injunction should not be retained until final hearing on the theory that defendant was seeking to take complainant's property without just compensation.

3. *Electric Companies; Franchise; Arbitration; Agreement.*— Where an electric company accepts a franchise under an agreement that its poles may be used by another company for a compensation to be agreed upon between the companies, and in case of disagreement the compensation to be decided by the city electrician, it is bound, either to agree as to the compensation, or accept the arbitrament of the city electrician, unless such arbitrament is shown to be arbitrary or corrupt.

[Montgomery Light & Water P. Co. v. Citizens L., H. & P. Co.]

APPEAL from Montgomery City Court.

Heard before HON. A. D. SAYRE.

Bill by the Montgomery Light & Water Power· Company against the Citizens' Light, Heat & Power Company. From a decree dissolving a preliminary injunction, complainant appeals.

R. E. STEINER and HORACE STRINGFELLOW, for appellant.—Complainant is entitled to an injuncton to prevent the use of its poles by the defendant until compensation has been made.—*Birmingham Traction Co. v. Birmingham Electric Co.,* 119 Ala. 121. Condemnation proceedings cannot divest the owner of his property unless every prerequisite to the jurisdiction called for by the statute is strictly complied with, and this must affirmatively appear on the face of the proceedings.—*McCullys · v. Cunningham,* 96 Ala. 584; *Bottom v. Brewer,* 54 Ala. 288. The refusal of complainant to agree upon compensation gave respondent no right to use the poles without paying compensation therefor.—119 Ala. 129. The injunction was improperly dissolved and· should be re-instated.—Authorities supra.

PHARES COLEMAN and CRUM & WEIL, for appellee.— No brief came to the reporter.

DENSON, J.—The bill is exhibited by the Montgomery Light & Water Power Company, a corporation, against· the Citizens' Light, Heat & Power Company, a corporation. Each of the· corporations is possessed of a franchise granted by the municipal authorities of the city of Montgomery, authorizing it to erect and maintain along the streets of the city poles and wires for the purpose of enabling it to supply electric lights to its patrons. The purpose of the bill is to enjoin the defendant from stringing its wires on one of the complainant's poles. On the hearing on the bill and answer, the chancellor dissolved the preliminary injunction, and from the decree of dissolution the complainant appealed.

The complainant is the older of the two corporations and had completed its line. One of its poles (the one involved in this controversy) is located on the northeast corner of Commerce street and Court Square. The only ground for injunctive relief, as shown by the original bill, is found in the third section of the bill, which is as follows: "The Montgomery Light & Water Power Company already has strung upon its pole on the northeast corner of Commerce street and Court Square all the wires that said pole will bear with safety to its service and security to the people of Mantgomery, but notwithstanding this fact, and notwithstanding the fact that said ordinance of the city council of Montgomery expressly forbade the Citizens' Light, Heat & Power Company from interfering with the poles and wires of orator, nevertheless said Citizens' Light, Heat & Power Company is attempting to string and is stringing its wires on said pole, and unless it is interferred with it will so string its wires, which will result in irreparable damage to your orator, and make said pole absolutely dangerous to the lives of the people of the city of Montgomery who are walking the streets thereof, and in addition thereto will make it impossible for your orator to attend to the securing of its own wires on said pole, endangering the lives of its employés who are compelled to frequently climb the said pole for the purpose of repairing your orator's wire, and prevent it from successfully furnishing current to the people of Montgomery for lights." The respondent filed a sworn answer to the original bill, specifically denying each and all the averments upon which the appellant's supposed right of relief was founded. The cause was set down for hearing on motion to dissolve the injunction. On the day fixed for the hearing the bill was amended by attaching as an exhibit to the bill a copy of the ordinance passed by the city council of Montgomery under which the defendant was operating, and by averring "that, if said Citizens' Light, Heat & Power Company is permitted to string its wires on said pole in the manner hereinbefore averred, it will be without the consent of the own-

er, and the taking of the private property of orator and applying the same to the use of the said Citizens' Light, Heat & Power Company without just compensation being first made therefor." The hearing was postponed, and the bill as amended was answered. We will advert to the answer later on in this opinion.

It is here insisted by the appellee that in considering the motion to dissolve the injunction we should do so upon the bill as it was originally filed, and upon which the injunction was granted, and that no consideration should be given to the facts contained in the amendment to the bill. "In other words, the injunction must stand or fall upon the sufficiency of the bill as originally filed, and cannot be propped up by subsequent amendments. Therefore, if by reason of the insufficiency of the averments in the original bill the injunction was improvidently issued, it was properly dissolved, without regard to the subsequent amendment. In the view that we shall take of the case it is unnecessary for us to determine this question of practice. We remark, however, that in the case of *Mack v. De Bardeleben Coal Co.*, 90 Ala. 396, 8 South. 150, 9 L. R. A. 650, the right to amend an injunction bill seems to be recognized. The ordinance attached by complainant as an exhibit to the bill as amended, and under which it is alleged the defendant was operating, contains a provision that defendant's wires shall not be erected and strung so as to interfere with the poles and wires of any other company. In a similar case between these same litigants, in which this ordinance was involved, it was said: "The fact that defendant was under a contract obligation so to erect its poles and wires as not to interfere with the poles and wires of complainant does not change the rule of law that the complainant, seeking an injunction, must by his bill show the necessity for it by the statement of facts, from which the court may decide, and not by the mere statement that complainant will be irreparably injured. The only difference is that, if the contract prescribed any terms different from those which the law would demand without the special contract, then the allegations must be of facts which would

show a violation of the contract or condition prescribed by the city ordinance, which if there were no contract or ordinance prescribing conditions, the allegations would have to show facts from which the law would infer actionable injury." In this respect it would seem that it cannot be successfully contended that the averments of the original bill are more than conclusions of the pleader. The size of the pole, its capacity, the number of wires thereon, the proximity of these wires one to another, or their location on the pole, are material facts wholly undeveloped by the bill, original and as amended.—*Montgomery Light & Water Power Company v. Citizens' Light, Heat & Power Company,* 142 Ala. 462, 38 South. 1026.

Neither of the parties claim any exclusive privilege or franchise to use the streets of the city. Such claim, if it were made, would be futile under the principles of law applicable to the grant of franchises by municipal corporations or natural persons for the purpose of erecting and maintaining public utilities.—Const. § 22; *Montgomery Light, & Water Power Company v. Citizens' Light, Heat & Power Company, supra,* and authorities there cited. By the amendment to the bill it would seem that the complainant does claim the exclusive ownership and privilege with respect to the pole in controversy; and the insistence by the appellant is that the bill as amended shows that the respondent was, by stringing or attempting to string its wires on the pole as alleged, taking or attempting to take the private property of the appellant without its consent and without just compensation being first made therefor. Therefore it is argued by the appellant that the bill as amended is brought within that class of cases in which it has been held that where "it is affirmatively and distinctly averred that property of which the complainant was possessed has been wrongfully taken possession of by a defendant, which has not proceeded to its condemnation in the mode prescribed by law, and has not, in obedience to the constitution, made therefor just compensation, these facts of themselves, without regard to any question of irrepara-

ble injury, give the court jurisdiction to prevent the further invasion of the property by injunction." The court in the case of *Highland Ave. & Belt R. R. Co. v. Matthews,* 99 Ala. 24, 10 South. 267, 14 L. R. A. 462, speaking of this branch of equity jurisdiction, said: "The jurisdiction of a court of equity to prevent the commission of such a wrong is not based upon the absence or inadequacy of legal remedies for the recovery of damages for the wrong when it has been consummated. The recognized equitable remedies may find support upon either of two grounds: (1) Upon the special jurisdiction of courts of equity to confine corporations to the exercise of the powers conferred upon them by law; and (2) upon the inadequacy of legal remedies to protect the constitutional right in its entirety, courts of law being unable to compel the payment of compensation to the property owner before his property is taken, injured, or destroyed." In this view of the case it would be of importance "to subject to analysis the allegations of the bill and determine whether irreparable injury, in the sense of that term in a court of equity, is shown by them."—*Birmingham Traction Co. v. Birmingham Ry. & Elec. Co.,* 119 Ala. 129, 24 South. 368; *Birmingham Traction Co. v. Sou. Bell Co.,* 119 Ala. 144, 24 South. 731.

Granting that the averments of the bill as amended show that the respondent is a corporation vested with the authority to exercise the right of eminent domain, we must examine the case as presented by the bill as amended and the answer thereto, and determine whether or not the injunction was rightfully dissolved. In its answer to the bill as amended the respondent makes specific denial of the facts set up in the amended bill, and also avers that at the time the complainant was granted by the city authorities the franchise under which it was operating there was in force in the city an ordinance which provided that all companies erecting or operating electric light and power wires, telephone and telegraph wires, or any other wires in the streets or along the alleyways or across the public places of the city of Montgomery, should occupy the same poles that were at

such time in use by any other electric company, whenever such joint use was practicable, to be determined by the committee of electric control of the said city council of Montgomery, and that the company so stringing its wires upon any pole or poles already in use by any electric company should pay to the latter such rental or compensation for the joint use of such poles as said companies might agree upon, and, if they failed to agree, then such as may be fixed by the city electrician of the city of Montgomery. It is further shown in the answer that by an ordinance contract made on the 30th of April, 1902, "between the appellant and the city council of Montgomery, all poles then or thereafter erected and all wires then or thereafter strung by appellant should be subject to the then existing or any future ordinance that might be passed as far as applicable, and that the city council, in its discretion, might grant permission to any other electric light, telegraph, telephone, or other companies using wires to string their wires upon the poles of appellant, upon condition that such other companies should pay a reasonable compensation for the use of said poles." It is then shown by the answer that the city council of Montgomery adopted a resolution whereby the committee of electric control of said city council, together with the city electrician, were directed to designate what poles in use by other companies along the route described by the city electrician for this respondent to string wires should be used by the respondent, and to determine which of the poles so designated it was practicable for respondent to use in stringing its wires jointly with the complainant. It is then shown that the committee on electrical control and the city electrician ascertained that the joint use of the pole in controversy was practicable, and the committee on electrical control, after investigation. authorized and directed respondent company to string its wires on said pole. It is further shown that, the parties (complainant and defendant) having been unable to agree on the compensation to be paid, the city electrician fixed the amount, which appellee tendered to the complainant, and the complainant refused and declined to accept the amount.

The complainant having accepted its franchise under the conditions stipulated in its contract and the ordinances of the city then in existence, it cannot be said that it is not bound by the qualifications fixed upon the franchise by the contract and ordinance. It is obvious from a glance at the contract and ordinances in the record that the city, as it had a right to do, reserved the right to regulate the use by complainant of the poles set by it, and, proceeding in accordance with the terms of the ordinance and contract, that it had the right to determine whether or not it was practicable for the defendant to use the pole in controversy jointly with the complainant; and in doing this we will presume that it was done by the authorities with due consideration for the rights of the parties and the safety of the public, and, further, that under the direction of the city authorities the respondent might use the pole, making compensation to complainant as required by the law. Under the denials in the answer, which are specific and full, the averments therein which are responsive to the bill, it seems to us that the injunction could not be retained on the theory that appellant's property was sought to be taken without just compensation. It is true the compensation was not paid, but it is also true that it was the complainant's fault that it was not. The amount of compensation was fixed, as was required by the ordinance it should be, after the complainant had declined to agree with the defendant on the amount. The amount fixed was tendered to the complainant, and it declined to receive it. We do not see what more could have been done by the defendant, and the complainant cannot be allowed to make a case on this point for equitable interference by its obstinacy.

We are aware that it was said in the case of *Birmingham Traction Co. v. Birmingham Ry. & Elec. Co., supra,* that refusal or failure to agree on the amount of compensation to be paid afforded no right or excuse for the taking of property of another without condemnation proceedings and payment of compensation. Grant-

[Town of New Decatur v. Scharfenberg.]

ing that this is a case in which condemnation proceedings might have been resorted to, that case is not an analogous case. In that case there was no duty to agree. Here both parties were acting with respect to privileges granted them by the municipality and with respect to property over which the municipality had reserved the right of regulation with regard to the very matter in dispute. The appellant having accepted its franchise under the conditions adverted to, was in duty bound to either agree on the compensation or accept the arbitrament of the city electrician, unless shown to be arbitrary or the result of corruption.

Finally, we conclude, as did the chancellor, that it is the safer course to allow the direction of the municipal authorities to prevail until upon a final hearing the merits of the respective contentions may be fully examined and made plain. The decree dissolving the preliminary injunction is affirmed.

Affirmed.

WEAKLEY, C. J., and HARALSON, and DOWDELL, JJ., concur.