## ELLSWORTH v. HALE, ADM'X.

1. TENANTS AT WILL : *Possession and power of to lease, etc.*
When a person in possession of land permits his daughter and her husband to use aud improve the land, they become at most mere tenants at will; their possession would not ripen into a title without some act or declaration indicating an intention to hold adversely ; nor would it empower them to grant leases to strangers with any more permanent rights than they enjoyed.

2. INJUNCTION : *To restrain trespasses upon land.*
Where repeated and continuing injuries to the freehold are of a nature to constitute a nuisance equity has jurisdiction to enjoin them: but injuries to chattel intercsts in lands, or mere acts of aggression and injury not rendering the freehold less fitting for enjoyment and amounting to mere trespasses, however often repeated, afford no grounds for an injunction, unless in case of insolvency or some other peculiar equity; and it is in all cases essential that plaintiff should show a clear right to the possession.

3. SAME : *To prevent multiplicity of suits.*
To warrant an injunction on the ground alone of preventing a multiplicity of suits, the same rights should be claimed by different persons against one or by one against many. It is not authorized to prevent the necessity of suing one person for a succession of wrongful acts.

APPEAL from *Garland* Circuit Court in Chancery.

Hon. J. M. SMITH, Circuit Judge.

*B. F. Rice*, for appellant.

EAKIN, J. :

J. C. Hale held lands in the Hot Springs reservation under claim of title. He placed his son-in-law and daughter, Mr. and Mrs. Warren, in the possession and enjoyment of a portion of it, but gave them no title. So far as it appears, they were tenants at will.

Ellsworth, a resident physician at Hot Springs, rendered valuable medical services to Warren, for which Warren had promised him a lease of a portion of the ground at a nominal rent, but died before executing it. Ellsworth, in November, 1868, built an office upon the lot and took possession, Hale making no objection. The office was destroyed by fire on the 5th of December following. Meanwhile, Ellsworth had continued his professional services to Mrs. Warren, the daughter of Hale, and she, to carry out her husband's intentions, and as further compensation for services to herself, executed a lease of the lot to Ellsworth in January, 1869. The lease was for ten years, at a nominal rent. Shortly afterwards she died, leaving complainant in possession.

The bill was filed in December, 1870, alleging that complainant, intending to build again on the lot, had got together upon it lumber and material for the purpose, which defendant would continually remove by force and arms, in order to prevent him ; and that these trespasses were frequent and repeated. He states that he can. have no relief at law, save by multiplicity of suits, and prays that defendant may be enjoined from further interference with his possession, and for further relief. An interlocutory injunction in accordance with the prayer was issued by order of the Circuit Judge.

The defendant, Hale, denied that he had given the lands to.

Warren and his wife, or either of them, although he had permitted them to use and occupy it, and had allowed Warren to improve a portion of it, on condition that he would pay one-third of the expenses of a pending litigation concerning the title. He denies the authority of his daughter to make the lease. He insists that the occupation of complainant has been unlawful, and prays that the injunction may be dissolved, the bill dismissed, the complainant held to an account of rents and profits, and that he be required to deliver up his possession.

Pending the suit the defendant died, and the cause was revived against Sarah Hale as his administratrix.

A mass of depositions was taken on both sides, which were used upon the hearing. They do not change the material features of the cause presented above. The court dissolved the injunction and dismissed the complaint. The court further declared from the allegations of the pleadings and the proof in the case, that defendant would be entitled to the possession of the property; but as his answer was not made a cross bill, the writ of possession was on that ground alone denied. It was further ordered that an assessment of damages, resulting from the interlocutory injunction, be made at a future day, which was designated.

Pending the proceedings for the assessment of damages, complainant prayed an appeal from the decree, which was granted. The defendant has not appealed, and this court is not called upon to decide whether or not he was entitled to any relief on the facts stated, and the prayer of his answer.

The only ground upon which the interference of the court, by injunction, was invoked, was, to prevent the necessity of a multiplicity of suits to recover for repeated trespasses. It was not shown that the acts of defendant tended to the irreparable injury of the property, nor that the defendant was insolvent and thus beyond the reach of ordinary legal redress.

·Complainant claims only a ·chattel interest in the lot, and ·claims that under one who derived possession from defendant, ·under such circumstances as made his lessor herself, at most, ·a mere tenant at will, without a shadow of legal title.   The ·defendant, · being in possession of. the lands, ·might lawfully ·allow his daughter and her husband to use and improve them ·as long as he chose to extend the favor.   Such possession on ·their part would not ripen into a title without some act or ·declaration indicating an intention to claim adversely, nor ·would it empower them to grant leases to strangers with any more permanent rights than they had themselves.   As to third ·persons, their relation to the owner and the total absence of all ·documentary evidence of title required by the statute of ·frauds, sufficiently explained the nature of their possession, ·and none could be·misled without the grossest carelessness upon ·their own part.   In this. case the evidence leaves no doubt that ·complainant understood the matter thoroughly.

Courts of equity have always interfered to restrain repeated ·or continuing acts which amount to a nuisance to real estate, ·and to prevent waste between those having privity of estate, but never, until a comparatively recent period, to restrain acts ·of trespass as such.   Lord Thurlow seems to have set the ·precedent in a case repeatedly quoted and cautiously followed ·by Lord Eldon [*Flamarey's case*, cited in *Mitchell* v. *Dors*, 6 *Vesey, Jr.*, 147; *Hanson* v. *Gardner*, 7 Ib. 308.]   That was ·a case where permanent injury to the freehold would have resulted from the trespass.   The doctrine is in consonance with the feudal sentiment, which attributes to a freehold inter-·est in land a peculiar value, different from a chattel interest, ·or mere personal property.   No one piece of land can, in this· view, be considered as good as another.   Its loss or · injury cannot be fully compensated by other lands or by money with which other lands may be purchased.   Later still, and very

reluctantly, the courts have extended the doctrine to slaves and. other personal property, which may have a *pretium affectionis*, such as family pictures, relics, etc., an injury to which will now be restrained. I do not meet in the English books, any cases where the doctrine has been applied to mere chattel interests in lands on the sole ground of irreparable injury, independent of insolvency or some other equitable element. A chattel interest does not come within the reason of the rule, being transient as personal property is. The court is not prepared to say that a peculiar case may not occur, in which the interference by injunction to protect a chattel real might be properly invoked. To protect a trust for instance. But ordinarily, without some peculiar grounds, it ought not to be done, and no peculiar grounds are shown here.

Where repeated and continuing injuries to the freehold are of a nature to constitute a nuisance the jurisdiction to enjoin them stands upon ancient grounds. The distinction is taken by Lord Hardwick in *Corelson* v. *White*, 3 Atk., 21. He says: "Every common trespass is not a foundation for an injunction in this court, where it is only contingent and temporary ; but if it continues so long as to become a nuisance, in such case the court will interfere and grant an injunction to restrain the person from committing it." The distinction is. obvious between such continued acts as render the *corpus* of the freehold less fitting for enjoyment ; such as turning water upon it, obstructing the light, or infecting the air, and mere acts of aggression and injury ; such as pulling down fences and the like. In the former class of cases there arises a nuisance which may be enjoined. In the latter there are mere trespasses, which, however often repeated, may be, each time, remedied by action. As remarked by Justice Lumpkin, in *Hatcher* v. *Hampton*, 7 Geo. 48 : "It has never been supposed, that because one person chooses daily to pull down the

fence of another" (or, he might have said, to take away his lumber) "and turn his stock in his fields, that this would authorize the courts of chancery to restrain the intruder by injunction."

Again ; upon the ground of avoiding multiplicity of suits, the rule against enjoining has been further relaxed, and injunctions have been issued upon that equity. But that does not mean to save a person from the necessity of suing the same person for a succession of wrongful acts, which he may persist in doing. Any man has the power to subject himself to a great number of suits, by a great number of trespasses of any kind, and courts of chancery would undertake too much in undertaking thus to coerce the general peace of the community, or to protect the property of individuals. To warrant the interference of chancery on the ground, alone, of preventing multiplicity of suits, the same rights should be claimed by different persons against one, or by one against many. *High on Injunctions, sec.* 459.

There are other cases applicable to real as well as personal property where injunctions may issue upon the ground of the insolvency of the wrong doer ; and, as ancillary to a bill to remove a cloud from title, it would doubtless be proper in a chancellor to restrain the adverse claimant from acts of trespass *pendente lite.*

These relaxations of the rule are exceptional, and in all of them (save in cases to remove a cloud) it is essential to the exercise of this prompt and somewhat dangerous remedy, that complainant should in the first place show at least a clear right to the possession, if not to the freehold. This court, in *Conway et al. ex parte,* 4 Ark., 344, adopts, on this point, the language of Chancellor Kent in *Garder* v. *Newberry,* 3 *John Ch.,* 165, as follows :

"The interference rests upon the principle of a *clear and*

*certain right* to the enjoyment of the subject in question, and an injurious interruption of that right, which upon just and equitable grounds ought to be prevented."

Again : it was held by this court in a case similar to this, where the defendant claiming possession of lands owned by the United States, had sued out a forcible entry against the occupant, that an injunction will not be granted to restrain a mere trespass, where the injury is not irreparable, and destructive of the plaintiff's estate, but is susceptible of perfect pecuniary compensation, and for which the party may obtain adequate satisfaction in the ordinary course of law. *Foster ex parte*, 11 Ark., 304.

The complainant in this case does not complain of any nuisance, irreparable injury, or insolvency. He does not show any clear title in himself, nor really any injury to the lease beyond a mere technical breaking of the close. The injury is to a lot of personal property which he has been collecting for building purposes. He says it will be repeated, and he asks the court to relieve him of the trouble, loss of time and expense of suing at law. The case does not come within any of the exceptions under the most relaxed state of the old rule. The injunction should not have been granted, and there was no error in dissolving and dismissing the bill.

Affirm the decree and remand the cause for further proceedings in accordance with equity practice for the assessment of damages.