# Deegan *et al. v.* Neville.

### *Bill to enjoin Trespass upon Property.*

1. *Injunction; equity of bill to restrain trespass.*—An injunction will not be granted to restrain a trespasser merely because he is trespassing upon the property of the complainant; but the foundation for the exercise of the jurisdiction of a court of equity, in the restraining of trespasses committed or

[Deegan *et al.* v. Neville.]

threatened, rests upon the inadequacy of ·legal remedies to compensate for the probably injuries which may result in the commission of the trespass if not restrained, and upon the probability of irreparable injury and a multiplicity of suits. Where facts are not shown to bring the case within these conditions, injunctive relief will be refused.

2. *Same; same; destruction of the right of full enjoyment of an estate.*—Where the complainant in a bill to enjoin trespassers bases his right of relief upon the fact of the destruction of the right of the full enjoyment by the complainant of the leasehold estate held by him, but it is shown that the business conducted by him upon the premises alleged to have been trespassed upon is not in any manner interfered with, and there are no facts averred which show that there was a destruction of the use by the complainant of the premises for the purposes for which they were rented, the injury complained of is of such a nature as is susceptible of adequate pecuniary compensation in damages, and the complainant is not entitled to maintain his bill.

3. *Same; same; continuous trespass.*—To make the injury of trespassing complained of in a bill to enjoin such trespasses a continuing one, it must be shown to be of such a character as that its continuation and recurrence is not dependent upon any particular act to be done by any particular person; and this is true although the trespass complained of is oft repeated.

4. *Same; same; prevention of multiplicity of suits.*—In order to call into exercise the jurisdiction of equity in the issuance of an injunction upon the ground of preventing a multiplicity of suits, it must be shown that there are different persons assailing the same rignt and "each standing on his own pretentions;" and, therefore, the relief ·by injunction can not be granted in a case where it is shown that persons are guilty of a repetition of the same trespasses simply because there may be several of them asserting the right to ao so, when it is shown that this right is asserted under the authority and by the direction of one of the defendants who alone claims the right to the possession of the land.

5. *Same; same; landlora and tenant.*—A tenant while in possession of the rented premises can not maintain a bill to enjoin the landlord from trespassing upon the rented premises, upon the ground that there was a breach of the covenant of quiet enjoyment arising out of the contract of lease and the trespass complained of was an unauthorized reentry by the landlord upon a portion of the leased premises

and the taking of possession of the same; since in such case an action at law upon an implied covenant of quiet enjoyment, would furnish the tenant adequate relief.

APPEAL from the Chancery Court of Mobile.

Tried before the Hon. THOMAS H. SMITH.

The bill in this case was filed on September 24, 1900, by the appellee, Henry Neville, against the appellants, William Deegan, Michael Smith and John McAdory. It was averred in the bill, as amended, that the complainant was in possession of certain specifically described lot and buildings and improvements thereon, in the city of Mobile, under a lease to him for a term of years; that the defendant had, before and at the time of filing the bill, continuousuly and willfully trespassed upon said premises, notwithstanding the complainant had repeatedly warned and requested them not to do so; that the respondents were, from day to day, filling his yard, back of the buildings occupied by him, with broken bricks, dust and all kinds of debris, and were dropping the said brick and debris from his roof and from an elevated structure which they have erected over a portion of his premises, at such times and in such a manner as to render it dangerous for him to occupy or use the said portion of his premises; that they have broken and so damaged his water closets that the water flowing from the same has overflowed his yard so as to render the same a menace to health on account of the unsanitary condition thereof; that they have and are nailing upon his walls and roof wooden supports and braces for another building, which render the said walls which are now already weak, unsafe; and your orator avers that the said trespassing of the said respondents is being continued from day to day, and that the said respondents threaten to continue same, in utter disregard of your orator's request to them not to do so.

It was then averred in the bill as amended that the injuries and trespasses complained of were continuous in their nature, and the danger of injury from the brick and debris being dropped into the yard was continuous and imminent; that before the filing of the bill he had requested the defendants in writing to discontinue, but

·[Deegan *et al.·* v. Neville.]

they had refused to do so. Then continuing, the bill, as amended, averred the following: "Your orator shows and submits unto your honor that his remedy at law for said continuous injuries and trespassing is entirely inadequate for the reason that such remedy at law would necessitate a multiplicity of suits, and for the further reason that before he can get a trial at law the said respondents will probably have caused some serious accident or injury to your orator for which the law can not compensate."

The prayer of the bill was that the respondents be enjoined from further trespassing upon said premises. Upon the filing of the bill, a preliminary writ of injunction was issued. In the answer to the bill, it was averred that William Deegan was the owner of the property described in the bill of complaint and had leased the same to the complainant; that the other defendants, Smith and McAdory, were contractors who were under contract with the defendant Deegan, to make improvements upon a lot joining the one in question, which was also owned by said Deegan. The defendants then denied in their answer that the complainant was in possession of all of said property described in said bill, in the manner therein alleged; and then averred that on August 2, 1899, the defendant Deegan and the complainant entered into a contract of lease, whereby the said Deegan leased to the complainant for one year from November 1, 1899, to November 1, 1900, the brick building occupied by the complainant, which said building is situated on the other part of the lot described in the complaint, but does not cover all of said lot; that in the rear of said brick building leased by the complainant, there was a small yard, and when the lease was made to the complainant, the defendant Deegan gave him the privilege of using said yard, but did not give the lease to the same, nor give him the exclusive use of said yard. It was then averred in the bill that Deegan was making improvements upon the lot which abutted the yard referred to, and that in the course of improving said property, it had become necessary to tear down the brick wall and

inclose said yard, and to rebuild the wall high enough to hold rafters and timbers for a new building that was being erected; that before doing this defendant Deegan went to the complainant and obtained his consent for such improvement, and that it was in the progress of this improvement that the defendant was engaged when they were stopped by the injunction issued in the case.

The defendants then denied that they were filling the complainant's yard with broken bricks at any time or in such manner as to render it dangerous for complainant to occupy said premises leased to him. They further denied that they had broken or so damaged the water closet as to render the same a menace to health on account of the sanitary condition thereof. That if said closet was broken, it was not by them or any of their employees, and defendants denied that they were nailing to the walls and roof of said building occupied by complainant any braces or supports which affected, in any way, the premises occupied by the complainant; and they further denied that they were trespassing upon the building leased by the complainant, in any way.

Upon the denials of the answer, the defendants moved the court to dissolve the injunction. There were affidavits introduced on the part of the complainant to sustain the averments of the bill, and on the part of the defendants, there were several affidavits introduced tending to show that the averments of the answer were true. The other facts of the case are sufficiently stated in the opinion.

On the submission of the cause, on motion to dissolve the injunction and to dismiss the bill for the want of equity, the court rendered a decree overruling each of said motions. From this decree the defendant appeal, and assign the rendition thereof as error.

L. H. & E. W. FAITH, for appellants.—"Equity will not restrain a trespasser simply because he is a trespasser. The injury must be *ruinous* to the property in the manner in which it has been enjoyed, and such as *permanently* to impair its future enjoyment."—Bispham's Equity, § 436; *Kellar v. Bullington,* 101 Ala. 267; High on Injunctions, § 460; 16 Am. & Eng. Enc. of Law

(2d ed.), 360. It has been stated that "equity will interfere when the trespass is recurrent, continuous, and to avoid a multiplicity of suits, and the title to the land is admitted, or is clearly in the plaintiff."—*Bowling v. Crook,* 104 Ala. 137.

The character of "continuous" and "recurrent" trespasses such as give equity jurisdiction to interfere are *permanently* "continuous" or "recurrent," and not simply *temporarily* "continuous" or "recurrent."—*Ninniger v. Norwood,* 72 Ala. 277.

In order to warrant interference by injunction to prevent a multiplicity of suits, "there must be different persons assailing the same right, and the principles upon which the relief is granted have no application to a repetition of the same trespass by one and the same person, the case being susceptible of compensation in damages."—*Kellar v. Bullington,* 101 Ala. 271-2; High on Injunctions, § 459; *Eldridge v. Hill,* 2 John. Ch. 281; *Jerome v. Ross,* 7 John. Ch. 336-7; *Thomas v. James,* 32 Ala. 725.

The general rule is that where the answer is unequivocal and is a full denial of every fact on which the equity of the bill rests, the defendant is entitled to a dissolution of the injunction. It is true that the rule is not without its exceptions, but it must be apparent irreparable mischief may follow, or some circumstance peculiar in its character must exist to justify a departure from it.—*Turner v. Stephens,* 106 Ala. 548; *Satterfield v. John,* 53 Ala. 127; *Weems v. Roberts,* 96 Ala. 379; *Bibb v. Shackelford,* 38 Ala. 613.

The parties by their written contract of leasing drew a distinction between appellee's right to the use of the building and his right to the use of the yard. To the building appellee was given the *exclusive use,* but to the yard he was given merely *"yard privileges."* Surely in view of the distinction drawn by the parties, this grant of "yard privileges" did not give apellee the *exclusive use* of the yard as against appellant Deegan, and his employees. This is a denial in the answer of the title of appellee, and upon this denial the injunction should have been dissolved.—2 Spelling Extraordinary Relief, §

1059; *E. & W. R. R. Co. v. E. T. V. & G. R. R. Co.*, 75 Ala. 282; *Kellar v. Bullington*, 101 Ala. 271; *Bowling v. Cook*, 104 Ala. 137; *Hamilton v. Brent Lumber Co.*, 28 S. R. 700; *Ashurst v. McKenzie*, 92 Ala. 490.

No counsel marked as appearing for appellee.

TYSON, J.—This bill was filed to enjoin the continuance of certain alleged trespasses. It appears that the complainant has a mere chattel interest in the lands. His possession of the premises was for a term, which expired on the 1st day of November, 1900, and the alleged trespasses appear to have been committed during the month of September preceding, by his landlord and his employees, the other defendants. Only thirty-seven days of his term remained between the date of the filing of the bill and the expiration of his possessory interest under his lease. The bill fails to disclose the nature and character of the use or enjoyment of the premises, but it appears from the lease, which is made an exhibit to the amended answer of respondent Deegan, that the house on the premises was rented by complainant to be occupied as a saloon or bar room "with yard privileges at west end (of house) to a certain board fence." We may presume that the complainant was occupying the house in conformity to the terms of his lease; that is he was occupying it as a bar room and was conducting a liquor business in it, though it is not so averred in the bill. The trespasses most grievously complained of were those alleged to have been committed upon this yard, which from their nature and character made it dangerous to the person to go into it or along or across it. The purposes for which this yard was used by the complainant is not shown by the bill. Indeed it is silent on this point, failing to show any use whatever of it by complainant. And, if resort be had to the affidavits filed by complainant in support of the truth of the allegations of the bill, we find that the only use he made of it was to traverse it in going to and from a water closet which was located in the extreme northwest corner of this yard, which closet did not belong to him under the terms of the lease, and to which

he had no exclusive right of enjoyment, if indeed it can be said he had any right to use it at all. But we may concede for the purposes of this case, that the yard was embraced in the lease and that complainant was entitled to its exclusive possession, and also of the water closet, and yet, it does not follow, that he is entitled to injunctive relief against trespassers.

It is a universal rule that an injunction will not be granted to restrain a trespasser merely because he is a trespasser. The foundation for the exercise of the jurisdiction of a court of equity in the restraining of threatened trespasses rests upon the inadequacy of legal remedies to compensate for probable injuries which may result if the commission of the trespass is not restrained. This principle is stated by Mr. High in his work on Injunctions (1st vol.), § 697, in this language: "The jurisdiction may now, however, be regarded as well established, although it is still sparingly exercised, being confined to cases where from the peculiar nature of the property affected by the trespass or from its frequent repetition the injury sustained can not be remedied by an action for damages, and where it may, therefore, be properly termed irreparable. The foundation of the jurisdiction rests in the probability of irreparable injury, the inadequacy of pecuniary compensation, and the prevention of a multiplicity of suits, and where facts are not shown to bring the case within these conditions, the relief will be refused. Equity will not, therefore, enjoin a mere trespass to realty as such, in the absence of any element of irreparable injury."

What is an irreparable injury, is often difficult to determine, but it must, in all cases, be determined by the particular facts shown in the case under consideration. It is said by PEARSON, J., in *Gause v. Perkins*, 3 Jones Eq. (N. C.), 179: "The injury must be of a *peculiar nature*, so that compensation in money cannot atone for it; where, from its nature, it may be thus atoned for, if in the particular case the party be insolvent, and on that account unable to atone for it, it will be considered irreparable."

Mr. Freeman, in his note to the case of *Jerome v. Ross,* 11 Am. Dec. 500, after reviewing the cases involving the principles underlying the issuance of writs cf injunction against trespassers, the basis of the jurisdiction and showing the injury must be irreparable, says: "This definition is perhaps as accurate as any that can be framed." Continuing he says: "It is thus seen that the ultimate ground upon which equitable intervention in cases of trespass rest is the inadequacy of legal remedies for the injury, which is the broad foundation of all remedial jurisdiction in equity. * * * An injury resulting from trespass, may be incapable of compensation in damages from a variety of reasons: 1. It may be destructive of the very substance of the estate; 2. It may not be capable of estimation in terms of money; 3. It may be so continuous and permanent that there is no instant of time when it can be said to be complete so that its extent may be computed; 4. It may be vexatiously persisted in, in spite of repeated verdicts at law; 5. It may be committed by one who is wholly irresponsible, so that a verdict against him for damages would be entirely valueless; 6. It may be committeed against one who is legally incapacitated from a beneficial use of the remedy at law."

It is manifest from the averments of the bill, that only two of the reasons assigned by Mr. Freeman, have been attempted to be invoked in this case. The first is, the destruction of the right of full enjoyment by the complainant of the premises. This consists in making it dangerous to go to and from the water closet on account of the dropping of brick from above, the breaking of this closet so as to cause the water flowing from it to overflow the yard so as to render the same a menace to health on account of its unsanitary condition, and in rendering the rear wall of the house unsafe by nailing braces and supports upon it. The damage done to the closet, and the menace to health caused by the overflow of the yard by the water flowing through it, being so easily remedied, they are hardly worthy of notice in considering the question of destruction of the enjoyment of the premises. And this may be said of the entire deprivation of the complainant to use the closet at all. As to the unsafe

condition of the wall, it is not shown that it would most likely fall before the termination of the complainant's occupancy of the house, thereby depriving him of its use. So far as we are advised, his business was not in any manner interfered with and certainly the facts averred were not destructive of or ruinous to the use for which the premises were rented. And unless this be shown, the injury is of such a nature as is susceptible of adequate pecuniary compensation in damages.—*Kellar v. Bullington*, 101 Ala. 271.

The second reason attempted to be invoked is that the injuries and trespasses are of a recurrent and continuous nature. No facts are alleged supporting this averment. It is a bald assertion of the pleader and seems to be predicated upon repeated acts of trespass alleged to have been committed by the respondents. To make the injury or trespass a continuing one, it must be of such a character as that its recurrence is not dependent upon any act to be done by any person. Thus, where a person erects a dam by which another's land would be inundated and his timber periodically destroyed, though the act done was a single one, that of erecting the dam, the trespass would not be single. Every rise of the water occasioned by heavy rains would produce another injury, so that from the very nature of the injuries there would be constantly recurring grievances and the jury would be unable to fix upon a time when the wrong may be said to be complete. Adverting to the allegation of repeated trespasses, it is only necessary to say, adopting the language of Justice LUMPKIN, in *Hatcher v. Hampton*, 7 Ga. 49: "It has never been supposed, that because one person chooses daily to pull down the fence of another, and turn his stock in his fields, that this would authorize the courts of chancery to restrain the intruder by injunction."—*Ellsworth v. Hale*, 33 Ark. 633. Applying that principle to this case, we cannot hold that the acts of trespass complained of, though oft repeated, would authorize the writ of injunction in this case.

The only other point now to be considered, is the one presented by the last paragraph of the amended bill.

[Deegan et al. v. Neville.]

As this appears to be the one upon which the complainant relied for the exercise of the jurisdiction of the court, we quote it. It reads as follows: "Your orator further shows and submits unto your honor that his remedy at law for said continuous injuries and trespassing is entirely inadequate for the reason that such remedy at law would necessitate a multiplicity of suits," etc. Waiving all objections to this averment on account of its failure to state the facts, from which the conclusion may be drawn that complainant's remedy at law is inadequate for the reason that such remedy at law would necessitate a multiplicity of suits, it is not a ground for equitable interference in this case. It is not doubted that the prevention of litigation under some circumstances is a subject of equity jurisdiction. And so too, the necessity of preventing a multiplicity of suits affords an exception to the general doctrine, that equity will not interpose by the extraordinary remedy by injunction when adequate relief may be had in the usual course of procedure at law. But in order to bring the case within the exception and to warrant the interference in such cases, it must be shown that there are different persons assailing the same right "and each standing on his own pretensions." This doctrine has no application to persons who are guilty of a repetition of the same trespasses, simply because there may be several of them asserting the right to do so under the authority of and by the direction of one of them who alone claims the right to the possession of the lands. *Hatcher v. Hampton, supra; Moses v. Mayor, etc.,* 52 Ala. 210; 1 High on Injunctions, § 700.

This case in its last analysis may be stated to be, adopting the most favorable view of it as presented by the complainant, a breach by the defendant, landlord, of his covenant for quiet enjoyment arising out of his contract of lease; an unauthorized re-entry by him upon a portion of the leased premises and the taking of the possession of the same for which he is liable in an action at law upon his implied covenant of quiet enjoyment— a remedy, if pursued, full and adequate to compensate complainant in damages for all injuries he may have suffered by reason of the breach.

[Syson & Co. v. Hieronymus Bros.]

The decree of the chancellor refusing to dissolve the injunction must be reversed, and a decree will be here rendered dissolving it.

Reversed and rendered.