## *Ex parte* Reid.

*Application for Prohibition to Chancery Court, in Matter of Contested Election.*

1. *Right to office ; how determined.* — The right to an office, dependent on an election by the people, is to be determined by the number of legal votes received at the election, and not by the certificate of election, nor by the governor's commission.

2. *Averment on information and belief.* — An averment in a bill in chancery, that the complainant " is informed and believes, and therefore states," simply puts in issue his information and belief, and not the truth or falsehood of the facts thus alleged.

3. *When prohibition will not be granted to chancellor.* — This court will not grant a writ of prohibition to the chancellor, to restrain him from interfering by injunction, in the matter of a contested election, to prevent the use of a certificate of election, which is alleged in the bill to have been obtained on false and fraudulent returns ; although the certificate was granted by the returning officer under a *mandamus* from the circuit court, and although the person who is in possession of the office, and by whom the bill in chancery was filed, is alleged by the petitioner to have been ineligible at the time of the election.    (BRICKELL, J., dissenting.)

APPLICATION by petition, by James Reid, Jr., for a writ of probibition, or other remedial writ suitable to the facts of the

case, to the Hon. ADAM C. FELDER, chancellor of the southern chancery division, sitting at Mobile, to restrain and prohibit further proceedings under a bill in chancery, filed in the chancery court at Mobile, by Cleaveland F. Moulton as complainant, against said James Reid and Rufus Dane, the sheriff of Mobile county. The said Moulton was the mayor of the city of Mobile during the year 1873 ; and at an election for officers of said city, held on the 2d day of December, 1873, under the provisions of an act of the general assembly approved February 8, 1870, entitled " An act to reorganize the municipal government of the city of Mobile, and to provide for the election of the officers thereof," he and said Reid were opposing candidates for the said office. On the day after said election, to wit, on the 3d day of December, 1873, Reid applied by petition to Hon. JOHN ELLIOTT, the judge of the sixth judicial circuit, at Mobile, for a writ of *mandamus* to Rufus Dane, the sheriff of said county, commanding him to ascertain the result of the election from the returns filed with him by the returning officers, and to issue a certificate of election, based on said returns, to said Reid, who claimed and alleged that he was elected. On the next day, the sheriff made his return to the rule *nisi* which had been served on him, stating that there was a difference of opinion between the contending candidates and their respective counsel, as to his right and duty in the premises ; and asking the instructions of the court, whether he should himself count the votes, and ascertain the result, or should be governed by the returns filed with him by the inspectors. The court instructed him to be governed by the returns in issuing his certificate ; and he accordingly issued his certificate of election, on the 8th December, 1873, to said James Reid, declaring that, as shown by the said returns, he was elected mayor of Mobile. This certificate recites, that the sheriff, in making it, acted under the order and instructions of said circuit judge. On the 15th December, 1873, said Reid took the oath of office as mayor of said city, which was administered to him by Hon. JOHN ELLIOTT.

On the 13th December, 1873, said C. F. Moulton filed his bill in chancery, at Mobile, against said Reid and Dane, alleging, on information and belief, that he received a greater number of votes at said election than said Reid received, and that the returns were falsely and fraudulently made from one of the wards in the city, so as to change the result of the election ; and praying an injunction against Reid, to prevent him from exercising any of the duties of the office of mayor, or interfering with the complainant in the discharge of those duties, until the final decree of the court ; and also against said Dane, as sheriff, to restrain him from destroying or in any manner in-

terfering with the ballot-boxes, or other evidences of the election, until the whole matter could be heard and determined by the chancellor. Under this bill, an injunction was granted by the chancellor on the 15th December, and an injunction bond was filed and approved on the 17th December, 1873.

The petition for prohibition was filed in this court on the 5th January, 1874. The proceedings had before the circuit judge on the application for *mandamus*, and the proceedings had under the bill for injunction, were made exhibits to the petition. The allegations of the petition, as to the petitioner's election, were in these words : " At said election, your petitioner was, as he is informed and believes, and thereon states, elected to the office of mayor of said city of Mobile, for the term of one year, commencing on the first day of January, 1874." " Upon information and belief, and upon advice of counsel at law, your petitioner avers that, before the filing of said bill in equity, or the order for said injunction, he had been duly elected, and declared elected, to said office of mayor of said city of Mobile, and had fully qualified to enter on the duties of said office." The petition further alleged, that said C. F. Moulton was, at the time of said election, and continued to be up to the filing of the petition in this case, the judge of the city court of Mobile, and was therefore ineligible to the office of mayor. The ground on which the writ of prohibition was asked was, that neither the chancellor, nor the said chancery court, had jurisdiction of the case made by the bill of complaint ; and the prayer was " for a writ of prohibition, or such other remedial writ as may be suited to the circumstances of the case, restraining and prohibiting them, the said C. F. Moulton and Hon. Adam C. Felder, chancellor as aforesaid, from any further proceedings in the said cause, and vacating and holding for naught all that has been done in that behalf; or, if it shall appear that this prayer is too large, then that said injunction, to operate in advance of any final decision, be prohibited, so that your petitioner may, until a final decision be had, remain in the possession of said office, and in the full enjoyment thereof, as, by virtue of said certificate, he is, as he maintains, under the law entitled to do."

P. HAMILTON, R. H. & R. INGE SMITH, and THOS. H. WATTS, for the petitioner.

PETERS, C. J. — The petition for *mandamus* to the sheriff of Mobile county, to compel him to issue the proper certificate of election to the petitioner as mayor of the city of Mobile, and the proceedings thereon had before the honorable judge of the sixth judicial circuit, having jurisdiction of said county of Mo-

bile; and also the bill of complaint for an injunction, with the proceedings thereon, to enjoin and restrain action under the order granted in said suit for *mandamus*, are made "exhibits" to the petition in this case, and, as such, parts of the petition itself. Said bill of complaint was filed in the chancery court at Mobile, and the injunction was granted. by the learned chancellor of the southern chancery division, who had jurisdiction in said county of Mobile. From the whole case, as thus presented, it does not appear that said Reid, the petitioner in this court, received a majority, or even a plurality, of the lawful votes polled at said election, by which he claims to have become entitled to the office of mayor of said city of Mobile. His claim to said office rests solely on the fact, that he holds the certificate of the sheriff of said county, as the returning officer of the election, unwillingly issued under a questionable right, — one that needed a writ of *mandamus* to enforce it. The facts of the whole case, as presented on both sides by the parties interested, are more fully set forth in the petition of said Reid, and the documentary exhibits thereunto appended, the statements in which are verified by the oaths of the parties complaining, and which are referred to for a more complete statement of the whole case.

The election in this case, out of which the present controversy has arisen, was held for the choice of the officers of the city government of the city of Mobile, on the second day of December, 1873. The election so held was required to be conducted according to the laws governing elections in this State, at that time. Acts of Ala. 1869–1870, p. 451, No. 97, § 13. The act of February 26, 1872, was then in force, which repealed the act approved October 8, 1868, and all laws and parts of laws in contravention of said last named act. Acts of Ala. 1871–1872, p. 15, No. 10, § 102. Under this latter act, the choice of the person elected is determined by the plurality of legal votes. Ib. § 72. The plurality of votes, then, at said election for the officers of said city government of Mobile, indicates and declares the popular will; and the person having the highest number of legal votes is elected. 9 Ala. 338, *Thompson's case*. And the right to exercise the office, thus conferred by a vote of the people, is derived from the election, and not from the certificate of the returning officer, or even from the commission of the governor. *Wammack* v. *Holloway*, 2 Ala. 31; *Screws* v. *Ragland*, at January term, 1873. The instrumentalities prescribed by law for the conduct of such elections, and for the ascertainment of the results of the vote of the electors, are not to be permitted to defeat the popular will, as declared by the votes of the people, who are the legal electors, and who have participated in the manner required by

law in such election. It is not to be presumed 'that these instru-
mentalities have been devised for such a purpose, but the rather
to secure obedience to the popular will, which is the sovereign
power in the state. For in the people is vested the supreme
power of the state, *Cohen* v. *Virginia*, 6 Wheat. 389, 264,
MARSHALL, C. J. And the purpose of all law is to enforce
their will. When there is a proper and legitimate expression of
this will it is to be enforced by the judgments of the courts.

Here, there is a contest growing out of an election. It has
already been shown that this contest can only be determined
by the number of legal votes given to the successful candidate,
or person voted for. It is this that makes the election, not the
certificate of the returning officer; else the certificate of the
returning officer would make the election, and not the votes of
the people. The application in this case does not show that
the person claiming the office received the highest number of
votes, and was therefore elected. This is the criterion that de-
termines the election and the right to the office. Therefore, an
application for a writ of *prohibition*, to restrain the chancellor
from enjoining the use of a certificate of election, which is
based on a fraudulent or false return of certain of the return-
ing officers, and which defeats the popular will as expressed by
the number of legal votes in the ballot-box, should show that
the applicant, if he claims the office, not only has the certificate
of election properly granted, but, also, that this certificate is
supported by a plurality of votes given in favor of the person
claiming to have been elected; otherwise, the application
should be denied. This is necessary to preserve the purity of
elections, and the proper vindication of the popular will. This
also comports with the spirit of the fundamental law, which
directs that " The right of suffrage shall be protected by laws
regulating elections, and prohibiting, under adequate penalties,
all undue influences from power, bribery, tumult, or other im-
proper conduct." Const. Ala. Art. I. sec. 36.

Besides, the writ of prohibition is an extraordinary proceed-
ing, and it is allowed of grace, and not of right. One who
seeks its assistance, should show that he holds his right to the
office by the vote of the people, which can only be determined
by the number of legal votes polled, which would put the right
beyond all question. Moreover, the writ of prohibition is a
discretionary writ, and it will not be granted, unless the ap-
plicant, who claims the office, has no other remedy to which he
can resort for his protection. *Smith's case*, 23 Ala. 94; 25
Ala. 81; *Greene & Graham's case*, 29 Ala. 52; 8 Bac. Abr.
209, 210.

From the judgment of the chancery court, here sought to be
prohibited and restrained, an appeal lies to this court. Then,

the petitioner has a sufficient remedy by appeal, without invoking the aid of this extraordinary proceeding. Rev. Code, §§ 3438, 3439, 3485. The bill in chancery to enjoin the use of a certificate of election, which has been improperly or fraudulently granted to a person who does not show that he has been duly elected by a plurality of legal votes, necessary to give a right to the office, for election to which the certificate has been issued, will not be restrained by writ of prohibition, if there is an appeal to this court from the judgment of the chancery court, in which such suit in chancery is pending. It would otherwise perform the office of a writ of error or an appeal.

This court has no power to summon a jury to try the facts of the petition, if they should be disputed, as could have been done at common law. 8 Bac. Abr. 221, 222, 223, letter *F*. It is, therefore, not enough for the petitioner, in such a case, if he claims the office, to aver, that "your petitioner was, as he is informed and believes, and thereon states, elected to the office" he claims; but he must show the number of legal votes given for him, and the number of legal votes given for his adversary, who claims the same office; or that the petitioner was elected by a plurality of legal votes necessary for a legal choice. Such an allegation as that set out above, merely puts in issue the *information* which the petitioner has received, as to his election. This is not enough to show that he is of right entitled to the office; and this is what must appear, to show that he has any right to protect — that he *is* the officer he *believes* himself to be.

The objection that Moulton, the mayor of the city, holds over under a former election for the year 1873, and that he was not, and is not now eligible to said office on the day of the last election in December last, is no ground for prohibition, even were it admitted to be true. If he was and is so ineligible, the proper proceeding to remove him is by *quo warranto*, which is a sufficient remedy. *Gardner's case*, 43 Ala. 243.

We refrain purposely from expressing any opinion as to the jurisdiction of the court in the chancery suit sought to be prohibited, until that case is brought into this court by appeal.

The motion for prohibition is denied, with costs.

BRICKELL, J., delivered a dissenting opinion, in which he held that the writ of prohibition should be granted, because the chancery court had no jurisdiction of the case made by the bill. This opinion has been lost, and the reporter has not been able to procure a copy of it for publication.