(77 South. 574)

CULLMAN PROPERTY CO. v. H. H. HITT LUMBER CO. et al. (6 Div. 413.)

(Supreme Court of Alabama. Dec. 20, 1917.)

1. DISCOVERY ☞13—PLEADING—TRESPASSES ON LANDS—DESCRIPTION.

As complainant seeking to enjoin trespasses upon lands and damages for prior trespasses could have ascertained the particular lands trespassed upon, and the quantity, quality, and value of the timber taken before the bill was filed as well as the court could do so, its bill, asking a discovery thereof, and not showing an attempt by complainant to obtain such information, was insufficient.

2. DISCOVERY ☞6 — DISCOVERY IN AID OF SUIT—ASCERTAINMENT OF DAMAGES.

Though a litigant is not compelled to request a wrongdoer to respond as to the payment of damages before suing therefor, he should not ask a court to discover evidence in aid of his suit, and to ascertain whether he has any suit, and, if he has, the amount of damages, until he himself has made some effort to ascertain them.

3. INJUNCTION ☞1 — NATURE OF PROCESS — DISCRETION OF COURT.

Injunction is an extraordinary process, not being ex debito justitiæ for any injury threatened or done to the estate or rights of a person,

but resting always in the sound discretion of the court.

4. INJUNCTION ☞135—DISCRETION OF COURT.

Though the grant or refusal of temporary injunction is largely discretionary with the court, depending upon the facts of each particular case, it is a sound judicial discretion, reviewable on appeal, and not an arbitrary administrative or executive discretion.

5. EQUITY ☞17 — RIGHT OF LITIGANT — INABILITY OF LOWER COURTS TO PROTECT RIGHTS.

The grace which equity should extend to a litigant in cases in which law courts cannot give proper protection to property rights is a matter of right in the litigant.

6. INJUNCTION ☞9—IMMINENT AND IRREPARABLE INJURY.

Courts will not grant injunction merely to allay apprehensions of injury; the injury must be imminent, and irreparable in a court of law; nor will the power be exercised to enforce a right or prevent a wrong wholly in the abstract, or involving only legal questions.

7. INJUNCTION ☞118(4)—PLEADING.

A bill in equity asking for injunction should allege with sufficient certainty all the essential facts on which complainant rests his claim for relief, and should then bring his case clearly within the recognized principles of equity jurisdiction, and should state facts showing complainant's rights, and imminent danger that they will be lost or defeated without the exercise of injunctive relief, it not being sufficient to allege as a conclusion only that the danger is imminent, and that injury will occur and be of the requisite character to warrant the extraordinary process.

8. INJUNCTION ☞118(1)—INJUNCTION TO RESTRAIN TRESPASS — AVERMENTS OF BILL — CONCLUSIONS.

Averments of a bill for injunction to prevent trespass to land that damages will be irreparable and that a multiplicity of suits at law would be required are insufficient without stating the facts.

9. INJUNCTION ☞118(1)—PLEADING—ALLEGATIONS OF MATERIAL FACTS IN BILL.

Every material fact to which plaintiff means to offer evidence, and essential to the right to relief, should be alleged in the stating part or premises of his bill for injunction; the facts should be distinctly and expressly averred, and not in a loose and indeterminate manner to be explained by inference or reference to other parts of the bill.

10. INJUNCTION ☞118(1)—PLEADING—INFORMATION AND BELIEF—SUFFICIENCY.

An averment of a bill for injunction that plaintiff is informed and believes, and therefore states a fact or facts, is bad, not putting the fact or facts in issue.

11. INJUNCTION ☞118(1)—PLEADING—ALLEGATION OF FACT ON INFORMATION AND BELIEF.

The form whereby a bill should aver a fact on information and belief is, "The complainant has been informed and believes, and upon such information and belief charges the fact to be."

12. INJUNCTION ☞118(1)—PLEADING—STATUTE.

Under Code 1907, § 3094, bills must contain a clear and orderly statement of the facts, without prolixity or repetition, and conclude with a prayer for appropriate relief, no combination or confederacy being necessary, the courts discountenancing prolixity and false allegations, and it being necessary to allege facts only, not evidence or conclusions.

13. INJUNCTION ☞118(1)—PLEADING—SUSTAINING BILLS ON FACTS.

Bills should be sustained on the facts alleged, and not on those inferred.

---

14. EQUITY ☞143 — PLEADING — GENERAL CHARGE OF FRAUD WITHOUT FACTS.

A general charge of fraud in a bill without facts is insufficient.

15. EQUITY ☞142—PLEADING—ARGUMENTATIVE ALLEGATIONS AND OPINION.

Argumentative allegations and expressions of opinion in bills are objectionable.

16. EQUITY ☞153—CONSTRUCTION OF BILLS AGAINST PLEADER.

Bills are construed against the pleader, and facts not averred are deemed not to exist.

17. EQUITY ☞186 — PLEADING — ADMISSION BY ANSWER—FACTS WELL PLEADED.

Admissions in the answer to a bill in equity concede only facts well pleaded.

18. EQUITY ☞141(1)—PLEADING—ALLEGATION OF ISSUABLE FACTS.

A bill in equity must allege issuable facts, not the evidence to establish the facts or to prove the issue.

19. INJUNCTION ☞118(1) — TRESPASSES ON TIMBER LANDS—BILL.

A bill to enjoin trespasses alleged that complainant owned a great deal of land well scattered over four counties, embracing thousands of different tracts, separated from one another by the lands of others, that thousands of dollars worth of timber had been wrongfully taken from the lands by respondents and others, and that respondents and the public were continuing wrongfully to take and destroy the timber, and would so continue unless injunction was awarded. The bill then sought to have the court take control of the lands for complainant as a quasi guardian or trustee, and to ascertain from which particular tracts timber had been taken or destroyed, together with the quantity, quality, and value, by whom taken and when, whether willfully taken, and, if so, what was done with it, or to what uses it was put, and what its value was, then to ascertain what contract or agreement, if any, the two respondents had between themselves as for the corporation's being liable for the trespasses of the individual, and, if such agreement was found to exist, to render decree against the corporation as for all the damages done to complainant's timber and lands, not only while complainant had been owner, but while certain of its predecessors owned the lands, and then perpetually to enjoin respondents from further trespassing. *Held*, that such bill was bad, its averments being general, vague, and indefinite, not specific as to many material facts and issues, often being conclusions merely.

20. INJUNCTION ☞46 — TRESPASSES — LEGAL REMEDY.

Courts of equity will not restrain any and all trespasses, even as to person and property, whether real or personal; the injured party being left to his remedy at law, if adequate.

21. INJUNCTION ☞46 — TRESPASS — PREVENTION OF WASTE.

Originally, courts of equity would interpose by injunction only to prevent waste.

22. INJUNCTION ☞46 — TRESPASS — LEGAL REMEDY.

Where a trespass tends to impair or destroy the substance of the estate, it will be enjoined, or if it would be impossible to ascertain the amount of damages.

23. INJUNCTION ☞26(4)—TRESPASS—MULTIPLICITY OF SUITS.

To prevent a multiplicity of suits is a recognized ground of equitable jurisdiction, and equity will in proper cases enjoin trespasses where a great multiplicity of suits would be required to compensate the injured party in damages.

24. INJUNCTION ☞118(4) — TRESPASSES ON LANDS—BILL.

Bill in equity to enjoin trespasses on lands must aver facts showing that legal remedies

are inadequate, as by alleging facts showing that the wrong is destructive of the substance of the estate; that the damages are incapable of ascertainment in a court of law, etc.

25. INJUNCTION ☞118(1) — TRESPASS ON LANDS—BILL.

A bill to enjoin trespasses on lands may allege facts showing two or more grounds or reasons for equity intervention.

26. EQUITY ☞39(2)—TESTING LEGAL TITLE.

Though courts of equity do not, as a rule, intervene merely to test legal title to land, especially by injunction as a substitute for ejectment, in some cases it may be necessary, to do complete justice, where equity acquires jurisdiction for equitable purposes, to determine legal titles, as, where the injury threatened is shown to be irreparable, it will be enjoined though legal title is in dispute.

27. EQUITY ☞141(1)—CONCLUSIONS.

Allegations of the bill as to complainant's ownership, or rights of action as to trespasses on the lands before complainant acquired them, were merely conclusions of the pleader, as were allegations as to defendant corporation's liability to complainant as for trespasses by other parties.

Appeal from Chancery Court, Cullman County; James E. Horton, Jr., Chancellor.

Suit by the Cullman Property Company against the H. H. Hitt Lumber Company and others. From decree for respondents on demurrer to the bill, complainant appeals. Affirmed.

See, also, 189 Ala. 13, 66 South. 720.

O. Kyle, of Decatur, for appellant. Callahan & Harris, of Decatur, for appellees.

### Statement of the Case.

MAYFIELD, J. This is the second appeal, to determine the sufficiency of the allegations of the bill in this case to warrant the relief prayed, viz. the enjoining of repeated trespasses upon land, the awarding of damages in consequence of trespasses upon the same land, and the decreeing of discovery against the respondents as to what particular lands were trespassed upon, the nature, character, and extent of the trespass, the times and occasions of the trespasses, the identity of the particular persons who committed them and for whom such persons were acting, and as to what contracts or agreements, if any, were ever made by and between the respondents, as to liability, compensation, or idemnity for such trespasses.

The report of the case on the former appeal will show many allegations which are yet in the bill. See 189 Ala. 13, 66 South. 720.

The original bill and the bill as amended before the first appeal were held bad, on demurrer, on account of the generality and uncertainty of the averments, and for multiplicity, and because the allegations as to many material matters were mere conclusions of the pleader. When the case went back the bill was again amended, or, more accurately speaking, a new or substitute bill was filed in lieu of the original and amended bills up

to that date, and demurrers thereto were interposed, and were sustained. From the decree on such demurrers the complainant prosecutes this appeal, assigning and arguing error in such rulings, and insisting that the substituted bill is sufficient in its averments. Some of the defects of the averments of the original bill, pointed out on the former appeal, were cured; but whether or not all were cured, and the averments rendered sufficient to authorize the relief prayed, are questions presented to us on this appeal. The chancellor wrote no opinion, but merely rendered a decree sustaining the demurrers, without even pointing out the particular grounds of demurrer which he deemed to be well taken. The last amendment relieved the bill of some of its faults as to multiplicity, by striking out certain of the defendants, and some of the averments as to such defendants, and, of course, as to the relief asked against them. In other respects the present bill is in effect, though not in terms, what the bill was on the former appeal.

As to the rights and interests of those named as complainants, the amended and substituted bill, after giving a history of the legal title to the lands, from the United States government to complainant, proceeds as follows:

"That on, to wit, the 27th day of September, 1911, the complainant, the Cullman Property Company, acquired all the interests of the said S. Roman, as trustee, and said cestui que trust in and to the lands then remaining unsold, a list of which is attached hereto as Exhibit A, and prayed to be made a part of this bill, and has acquired from the said S. Roman, as trustee, all of his interest and the interest of said cestui que trust arising as an incident to the ownership of said property prior to said conveyance, including all choses in action and cause of action in favor of S. Roman, as trustee, accruing to him by reason and because of the depredations on said lands committed by the respondents, and hereafter specifically set forth; and the said complainant, the Cullman Property Company, is now the beneficial owner of all said lands and the holder of the legal title thereto, and of all causes of action accruing to the said S. Roman, as trustee, prior to said conveyance; and the said S. Roman, as trustee, joins in this bill as a complainant, suing for the use and benefit of the Cullman Property Company as to said causes of action."

As to the repeated and continuous trespasses on the land, giving equity jurisdiction to enjoin future trespasses and to award damages as for past depredations, the present bill contains, among others, the following allegations:

"That although the title to said lands long since, to wit, about the year 1876, passed out of the government and vested in the South & North Alabama Railroad Company, and thereby became private property, and although the title to said property has since changed hands, and become the property, respectively, of the Louisville & Nashville Railroad Company, H. Hullman, the North Alabama Land Company, the North Alabama Land & Immigration Company, S. Roman, trustee, and the complainant in this case, it has been looked upon, considered, and treated by a great portion of the inhabitants of the rural districts where said lands are located as common property, and they have habitually trespassed thereon and have taken the timber therefrom; and, by reason of the sentiment that has grown up with reference to said lands, and the custom of the inhabitants of the districts where said lands are situated, to use it and its products as common property, it is practically impossible for complainant to obtain justice and recover in a suit at law before a jury in the counties where the land is located for a conversion of the timber therefrom; the complainant avers that divers and sundry persons and corporations have habitually preyed upon said property, taking therefrom great quantities of valuable timber, converting the same to their own uses, to the great detriment to said lands, and great and lasting damage to the owners thereof."

The property described embraces more than 50,000 acres of land scattered over four counties, within 15 miles of the Louisville & Nashville Railroad right of way; that is, necessarily scattered, because it is only in the odd-numbered sections. It is described as being in more than 2,000 separate and distinct tracts, mostly in 40-acre and 20-acre blocks.

There is no attempt to allege upon which particular blocks or tracts the trespasses have heretofore been committed or threatened, nor what particular kind or quality of timber is on any particular tract or tracts, nor what quantity and kind has been removed therefrom or destroyed, or is now threatened to be removed or destroyed, except in the most general terms, as, for example:

"That said respondents, by their said divers and sundry depredations and trespasses, committed through their numerous and sundry agents and employés at different times, places, and under different and sundry circumstances, and in the several different counties named above, have taken from the property described in Exhibit A vast quantities of valuable timber, the exact amount, quantity, quality, and value of which is unknown to the complainant, but of great value, to wit, $100,000 and perhaps more," etc.

It is also alleged that respondents have established telephone lines and logging roads over and across the lands of complainant; but the bill attempts no other description or location of the lines, or of any particular tract on or over which they are located. There are allegations that the trespasses are repeated and frequent, and that the injury is irreparable, but only as conclusions. The prayer of the bill is that the court ascertain—

"the quantity, character, and quality of the timber converted by each of said respondents, and the value thereof; and, if it be ascertained that said trespasses were intentional, that the value of said timber after it was manufactured into lumber be ascertained; that it be ascertained by the court, or referred to the register to be ascertained, the amount of damage that has been caused to the lands described in Exhibit A to the bill, aside from the mere conversion of the timber by reason of said depredations, the construction of logging roads and telephone lines thereon, and that all of the equities and rights of the parties be adjusted; that respondent H. H. Hitt Lumber Company be held liable for all timber converted by H. H. Hitt and damage done to said lands by him, his servants or agents, during the years 1909, 1910, and in 1911, up to the time of the incorporation of the H. H. Hitt Lumber Company, and that a decree be rendered against H. H. Hitt Lumber Company for the amount thereof; and a decree ordered

against said company for all damages committed by it since September 27, 1911, that said H. H. Hitt Lumber Company, its agents and servants, be forever and perpetually enjoined from further depredations upon the lands of complainant; and for such other and further general relief as may be agreeable to equity and good conscience."

## Opinion.

It will be seen that the allegations of this substituted bill as last amended, as lengthy as they are, are yet very general, indefinite, and uncertain. The allegations may be thus epitomized: That the complainant corporation now owns, and for several years heretofore has owned, a great deal of land situated in, and well scattered over four counties; that its holdings embrace thousands of different tracts, separated from one another by the lands of other parties, and that thousands of dollars' worth of timber has been wrongfully taken from these lands, by the respondents and other third parties, and that the respondents and the public are continuing wrongfully to take and destroy the timber, and will so continue, unless the chancery court affords the relief desired. The bill then seeks to have the court take charge or control of these lands for complainant, as a kind of guardian or trustee for complainant, and ascertain from which particular tracts or lands timber has been taken or destroyed, together with the quantity, quality, and value thereof, and by whom taken and when; and whether it was willfully taken, and, if so, what was done with it or to what uses was it put, and what its value was, after being so manufactured and put into other business; and then ascertain what contract or agreement, if any, the two respondents had between themselves as for the corporation's being liable for the trespass of the individual as to this timber and, if such agreement is found to exist render a decree against the corporation as for all the damages done to the timber and lands of complainant, not only during the time the complainant corporation has owned the same, but during the time certain of its predecessors in title owned it, whose rights, if any there be, it acquired by contract from such predecessors; and then perpetually enjoin these respondents from further trespassing upon any of these lands.

[1] It is evident, and of common knowledge, that the complainant ought to have ascertained, and could have ascertained, the particular lands trespassed upon, and the quantity, quality, and value, of this timber taken, before the bill was filed, as well as the court could do so after the bill was filed. The bill does not allege that the complainant or its predecessors in title ever attempted to ascertain these facts, from the defendants or any other persons or corporations. It may be that the respondents could and would willingly give the complainant all the information on the subject which they possess, and which the court could get from them by compulsion or discovery. Why resort to law until these facts are ascertained by the complainant, or until it is known that they cannot be ascertained without the aid of the court or a bill for discovery? For aught that appears, if the complainant should request the respondents to do what it seeks to have the court compel them to do by discovery, they might willingly comply, without being compelled so to do.

[2] It is very true that a litigant is not compelled to request a wrongdoer to respond as to the payment of damages inflicted and suffered, before suing therefor; but he certainly ought not to ask a court to discover evidence in aid of his suit, or to ascertain whether or not he has any suit, and, if he has, the amount of his damages, until he himself has made some effort at least to ascertain it.

[3] Injunction is extraordinary process, and the most important one which courts of equity issue. It is well denominated "the strong arm of equity." The writ "is not ex debito justitiæ for an injury threatened or done to the estate or rights of a person; but the granting [of] it must always rest in sound discretion, governed by the nature of the case." Enfield Toll Bridge Co. v. Conn. River Co., 7 Conn. 50. As is said in another case:

"Injunction is not of right but of grace; and to move an upright chancellor to interpose this strongest arm of the law he must have not a sham case, but a well-grounded complaint, the bona fides of which is unquestioned, or capable of vindication, if questioned." Sparhawk v. Union Pass. Ry. Co., 54 Pa. 454.

"There is no power the exercise of which is more delicate, which requires greater caution, deliberation, and sound discretion, or [is] more dangerous in a doubtful case, than the issuing [of] an injunction." Bonaparte v. Camden & A. R. Co., Baldw. 218, Fed. Cas. No. 1,617.

[4] While the granting or refusing of a temporary injunction is largely discretionary, depending upon the facts of each particular case, the term "discretion," as here implied, meaning a sound judicial discretion, reviewable on appeal, and not an arbitrary administrative or executive discretion. Buffington v. Harvey, 95 U. S. 99, 24 L. Ed. 381; American Circular Loom Co. v. Wilson, 198 Mass. 183, 84 N. E. 133, 126 Am. St. Rep. 409; 13 Eng. Rul. Cas. 112, and note.

[5] There are cases in which law courts cannot give proper protection to property rights, and equity can. In such cases equity should no more withhold protection and relief than should law courts if able to give it. The grace which equity should bestow in such cases then becomes matter of right. 14 Rul. Cas. Law, 312, 313; Sullivan et al. v. Jones et al., 208 Pa. 540, 57 Atl. 1065, 66 L. R. A. 712.

[6] Courts will not, however, exercise this extraordinary power of injunction merely to allay apprehension of injury; the injury must be both imminent and irreparable in a court of law. Neither will the power be exercised to enforce a right or prevent a wrong

which is wholly in the abstract, or where only legal questions are involved.

[7, 8] A bill in equity asking for the exercise of this extraordinary power should allege with sufficient certainty all the essential facts on which the complainant rests his claim for relief, and should thus bring his case clearly within these recognized principles of equity jurisdiction. The bill should state facts which show complainant's rights, and imminent danger that his rights will be lost or defeated without the exercise of this injunctive relief. It is not sufficient to allege, as a conclusion only of the pleader, that the danger is imminent, and that injury will occur and be of the requisite character to warrant the extraordinary process. Mere averments that damages will be irreparable, and that a multiplicity of suits would be required, are not sufficient for injunction, to prevent trespass to land; the facts should be averred. Bowling v. Crook, 104 Ala. 138, 16 South. 131; Kellar v. Bullington, 101 Ala. 267, 14 South. 466.

[9, 10] Every material fact to which the plaintiff means to offer evidence, and which is essential to the right relief, ought to be alleged in the stating part, or premises, of the bill. The fact should be therein distinctly and expressly averred, and not in a loose and indeterminate manner, to be explained by inference or by reference to other parts of the bill. S. & M. R. R. Co. v. Lancaster, 62 Ala. 555. An averment that the complainant "is informed, and believes, and therefore states" a fact or facts, is bad. It does not put the fact or facts in issue, but is simply the belief of the complainant in their existence. Ex parte Reid, 50 Ala. 439. See Lucas v. Oliver, 34 Ala. 626; Nix v. Winter, 35 Ala. 309.

[11] Bills often have to aver facts upon information and belief, but it does not follow that an averment upon either information or belief would be good. The form of averment is:

"The complainant has been informed and believes, and upon such information and belief charges the fact to be," etc. Burgess & Co. v. Martin, 111 Ala. 656, 20 South. 506.

[12-16] Bills must contain a clear and orderly statement of the facts without prolixity or repetition, and conclude with a prayer for appropriate relief. No combination or confederacy is necessary. The courts discountenance prolixity and false allegations. Code, § 3094. It is only necessary to allege facts, not evidence nor conclusions. Bills should be sustained on the facts alleged, and not those inferred. A general charge of fraud without facts is insufficient. Argumentative allegations and expressions of opinion in bills are objectionable. Bills are construed against the pleader, and facts not averred are deemed not to exist. R. Bishop's Heirs v. Adm'r & Heirs of S. Bishop, 13 Ala. 475; McDonald v. Mobile Life Ins. Co., 56 Ala. 468; Cameron v. Abbott, 30 Ala. 416; Walker v. Allen, 72 Ala. 456; Chandler v. Hanna, 73

Ala. 390; Coal City Coal & Coke Co. v. Hazard Powder Co., 108 Ala. 218, 19 South. 392; Danforth v. Herbert, 33 Ala. 497; Seals v. Robinson & Co., 75 Ala. 363; Williams et al. v. Spragins, Buck & Co. et al., 102 Ala. 424, 15 South. 247.

[17] These general rules of equity pleading apply with peculiar force and strictness to injunctions and other extraordinary process. Mere conclusions of the pleader are not sufficient in such cases. The facts should be alleged in a case like this, so that the court, and not the pleader, may judge as to whether or not the extraordinary process should issue, and the strong arm of equity be extended to avert irreparable injury. The state and federal decisions agree as to this. See 14 Rul. Cas. Law, p. 332, § 33, Injunction, and cases cited in note, among which are those reported in Louis. & Nash. R. R. Co. v. Garrett, 231 U. S. 298, 34 Sup. Ct. 48, 58 L. Ed. 229; Shelton v. Platt, 139 U. S. 591, 11 Sup. Ct. 646, 35 L. Ed. 273; Cruickshank v. Bidwell, 176 U. S. 73, 20 Sup. Ct. 280, 44 L. Ed. 377. Good pleading in equity requires that the complainant shall set out in his bill all the essential facts on which he relies for relief. No facts are properly at issue unless charged in the bill. Even admissions in the answer concede only the facts that are well pleaded.

[18] Where it is said that facts must be alleged, we mean issuable facts, not the evidence to establish the facts or to prove the issue. Vague averments on information and belief, and mere declarations and conclusions of the pleader, cannot be substituted for an averment of the issuable facts. The allegations ought to be direct and positive. This court, in the case of Kingsbury v. Flowers, 65 Ala. 479, 485 (39 Am. Dec. 14), which was similar to this, thus declared the rule:

"These averments are too general and indefinite to authorize the interference of a court of equity. Facts and circumstances should have been stated distinctly, from which the court could see plainly that, if future interments on these grounds are not prevented, there would be a diminution of the complainant's enjoyment of his dwelling, and at least probable injury to the health of his family. It is not enough to allege simply that such consequences will result. There must be such a clear, precise statement of facts, that there can be no reasonable doubt, if the acts threatened are completed, grievous injury will result. * * * Without the averment of special circumstances, from which the court can be satisfied that future burials on these grounds will most probably result in a nuisance, from which the complainant will suffer special injury, irreparable by the ordinary remedies at law, there should not be interference to restrain them." 65 Ala. p. 486, 39 Am. Dec. 14.

In another case like the present, this court said:

"The injury will be considered irreparable where the resulting damage will be incapable of being measured by a pecuniary standard, and generally where without assistance in equity the injured party must suffer invasion of his substantial rights without compensation. Elliott on Roads and Streets, § 665. And there is inadequacy of legal remedy when reparation, if

sought in the law forum, would involve a multiplicity of suits by the same plaintiff. Nininger v. Norwood, supra [72 Ala. 277, 47 Am. Rep. 412]; Pom. Eq. Jr. § 243. And also where a judgment, if obtained, would be uncollectible. High on Inj. § 717.

"The averment of a mere conclusion as to such inadequacy, or as to the irreparable character of the injury, without the averment of facts to support the conclusion, is insufficient. Kellar v. Bullington, 101 Ala. 267 [14 South. 466]; Bolling v. Crook, 104 Ala. 130 [16 South. 131]." Dennis v. M. & M. Ry. Co. et al., etc., 137 Ala. 657, 35 South. 32, 97 Am. St. Rep. 69.

It is true that the generality of the averments in the bill, and the character of many as mere conclusions, are sought to be excused by asking discovery; but as to this feature of the bill the averments are equally general, being, at best, the mere suppositions or expectations of the pleader as to what would be discovered or ascertained by the discovery. No facts, as such, are alleged, as to what information or evidence the respondents are possessed of. The allegations or averments, at best—construing them against the pleader—are that complainant hopes or believes that respondents are in possession of knowledge or evidentiary matter, either parol or written, which would prove or justify the conclusions alleged. The bill does not show any efforts on the part of complainant to ascertain the facts sought to be discovered, either from the respondents or from third parties. No demand or request is shown to have been made on H. H. Hitt, on the corporation or on any of its agents or officers, for the information which the court is asked to obtain by a discovery. It is not even charged or alleged that the respondents have any such knowledge or information, which would support the conclusions of the pleader. It is only alleged that the pleader believes they possess such information or documentary evidence as would prove complainant's conclusions. The rules as to facts necessary to be stated in bills of discovery were early announced by this court, in Lucas v. Bank of Darien, 2 Stew. 292, as follows:

"It has been ruled that 'a bill for a discovery and injunction at law must state some particular matter which the complainant has a right to seek a discovery of, as material to his defense, and without which he cannot proceed to trial. A mere inquiry, because the grounds of the suit at law are unknown, cannot be maintained, being a fishing bill.' Again, 'if a bill seeks discovery in aid of the jurisdiction of a court of law, it ought to appear that such aid is required. If a court of law can compel the discovery, a court of equity will not interfere; and facts which depend on the testimony of witnesses can be procured or proved at law.'"

In the case of Guice v. Parker, 46 Ala. 618, it is said:

"To maintain the jurisdiction for relief, as consequent upon the discovery, it is necessary to allege in the bill that the facts are material, and that the discovery of them by the defendant is indispensable as proof; that the plaintiff is unable to prove such facts by other proof."

"It must show that defendant is capable of making discovery of the facts sought. It is not sufficient to allege that there are no other witnesses than the adverse party to prove the facts. The bill should allege that the facts can be proved by defendant. It must also allege that the facts are not within complainant's knowledge, or, if he sues as assignee, not within the knowledge of his assignor. It cannot be maintained to discover matter whereof complainant has the same means of information as has defendant." 14 Cyc. 313.

"Diligence on the part of the complainant to secure the information sought must be shown." Id. 315.

In Horton v. Moseley, 17 Ala. 796, it is said:

"The general rule in regard to bills of this nature is that it must set forth the particular matters in reference to which the discovery is sought (Story's Eq. Pl. 325; Lucas v. Bank of Darien, 2 Stew. 280), and these matters should be alleged with sufficient certainty. It should also be shown that the answer of the defendant is essential to a complete defense, and that he is capable of giving the discovery sought. If a bill for discovery does not contain these requisites, it is demurrable. Story's Eq. vol. 1, 91."

No effort whatever, to obtain the evidence desired or thought to exist is alleged. For aught that appears, complainant could obtain by proper effort all the information desired, as well without discovery as by it. If complainant has any right to inspect the books or papers of respondent, a demand or request might insure the inspection. If it has no right to so inspect, a court of equity ought not to compel their production or surrender for inspection. In other words, the bill alleges no facts, as such, to show a necessity for the discovery; at most, it shows that a discovery might aid complainant in proving a case against respondents, and save it the trouble of obtaining the information from other sources, or by other means from the same source. The allegations as to complainant's title, rights, and interests in the lands trespassed upon, relating to times antedating complainant's acquisition of the lands, and as to which it here seeks to recover damages, are in the most general terms, being little short of mere conclusions of the pleader. No facts are alleged, by which the respondents or the court can know whether or not the conclusions are just or correct.

So are the allegations as to the respondent corporation's assuming liability to the complainant as for all trespasses or torts committed by H. H. Hitt as an individual, or by a partnership of that name, upon or against these lands, before and since complainant's ownership thereof. Construing the bill against the pleader, the averments are not sufficient to charge the corporation respondent as for all torts committed by H. H. Hitt upon or against the lands in question. As to this feature of the bill, it is not improper to say now that, if the allegations are made sufficient, so as to charge that the corporation agreed to answer in damages as for all torts and wrongs committed by third parties, such an agreement might be ultra

vires the corporation. We do not decide the question, because there is as yet no such allegation, except as a mere conclusion or supposition of the pleader.

[19] The substituted bill as to which demurrers were sustained is clearly bad for the reasons pointed out.

Most of appellant's argument is taken up in an attempt to sustain the main equity of the bill to enjoin trespass upon the land. The chancellor did not hold or decree that the bill was without equity; he merely sustained a demurrer to the bill, which contained numerous special grounds, pointing out defects which we have indicated in this opinion and in the opinion on the former appeal.

It was not decided on the former appeal that the original bill was without equity as to enjoining repeated or continuous trespasses upon land; it was then only decided that the allegations of the bill were not sufficient for this purpose; this court pointing out in the opinion the defects in the bill challenged by special demurrer. This is made certain in the concluding paragraph of the opinion on the former appeal, where it is said:

"We will not say that it is not possible to amend this bill so as to give it equity, but we are certain that the bill was subject to the demurrer interposed, on the grounds and for the reasons pointed out."

[20] Appellant in brief earnestly insists that we should overrule the case of Deegan v. Neville, 127 Ala. 471, 29 South. 173, 85 Am. St. Rep. 137, which we followed and quoted from on the former appeal. Counsel insist that there is only one other case in line with our holding on the former appeal, and that is Hatcher v. Hampton, 7 Ga. 49, and that these three cases are in conflict with all the authorities on the subject. We cannot agree with counsel in this conclusion. Neither of these cases holds as counsel seem to think— that a court of equity will never enjoin repeated trespasses to land by cutting or carrying away timber therefrom; that in order for equity to enjoin such trespasses, they must be continuous as well as repeated and frequent. Neither of the cases so holds. They point out the difference between repeated and continuous trespasses, and show that equity will often enjoin the latter, when it will not the former; but neither holds that the trespass must be continuous as well as repeated, in order to authorize equity to enjoin. This court has never held that chancery will not enjoin repeated trespasses to land in the way of cutting or destroying timber thereon; on the contrary, there are many cases upholding the right and power of chancery in such cases to enjoin such trespasses. Courts of equity will not restrain any and all trespasses even as to person or property whether real or personal. The injured party is left to his remedy at law, if that is adequate. If, however, the injury would be irreparable, or for some other reason or condition the remedy at law would be inadequate, then a court of chancery will award the necessary relief by injunction, the strong arm of the law. If, however, in any particular case—and every one of course must be determined upon its own peculiar facts—the party injured by the trespass can, in a court of law, obtain a complete, adequate, and efficient remedy, then equity will not enjoin. Burnett v. Craig, 30 Ala. 135, 68 Am. Dec. 115; Deegan v. Neville, 127 Ala. 471, 29 South. 173, 85 Am. St. Rep. 137.

[21] As has been heretofore pointed out, originally courts of equity would interpose by injunction, only to prevent waste, but that doctrine has been departed from. In Burnett v. Craig, 30 Ala. 138, 68 Am. Dec. 115, Justice Stone said:

"The rule, we admit, has been somewhat relaxed; and courts of chancery, in modern times, entertain this auxiliary jurisdiction on more liberal principles than they formerly did. We have found no case, however, where chancery has restrained a simple trespass, or succession of trespasses, on either the person or personal goods. The utmost extension of the principle which has come under our observation embraces only trespasses to realty, where this remedial agency is shown to be necessary to prevent multiplicity of suits, or to avert irreparable mischief. Livingston v. Livingston, supra [6 Johns. Ch. 497, 10 Am. Dec. 353]; Stephens v. Beekman, 1 Johns. Ch. 318; Mitchell v. Dors, 6 Vesey, 147; Amelung v. Seekamp, 9 Gill & Johns. 468."

[22] It is apparent from an examination of the text-books and the adjudicated cases that the modern tendency is to enlarge, rather than to narrow, the class of cases in which a court of equity enjoins trespasses to land. 14 Rul. Cas. Law, 444. Where the trespass tends to impair or to destroy the substance of the estate, then it will be enjoined. So, if it would be impossible to ascertain or to fix the amount of damages resulting from the trespass, then an action at law would be in adequate, and the trespass ought to be prevented. The rule is thus well stated in 14 Ruling Case Law, pp. 447, 448:

"The remedy by injunction may be invoked to restrain acts or threatened acts of trespass in any instance where such acts are or may be an irreparable damage to the particular species of property involved, for which there is no adequate remedy at law. As to when an injury is irreparable each case must depend on the particular facts, subject to the application of certain general principles elsewhere considered. Naturally it may be expected that the same principle will be found controlling here as elsewhere, to the effect that a party who seeks the aid of a court of equity to enjoin a trespass must allege facts and circumstances constituting such injury; otherwise the court will refuse its aid."

[23] To prevent a multiplicity of suits is a well-recognized ground of equitable jurisdiction, and equity will, in proper cases, enjoin trespasses, where a great multiplicity of suits would be required to compensate the injured party in damages. Counsel for

appellant insist that our decision on the former appeal and that of Deegan v. Neville, 127 Ala. 471, 29 South. 173, 85 Am. St. Rep. 137, are wrong, and should be overruled, as being contrary to modern authority, and quote at great length from Mr. Pomeroy on the subject. We have more than once, in recent cases, attempted to show that Mr. Pomeroy's text was not in line with the decisions of this and other courts on the subject of equity jurisdiction to prevent ·a multiplicity of suits. See Turner's Case, 135 Ala. 73, 33 South. 132; Southern Steel Co. v. Hopkins, 174 Ala. 465, 57 South. 11, 40 L. R. A. (N. S.) 464, Ann. Cas. 1914B, 692; Roanoke Guano Co. v. Saunders, 173 Ala. 347, 56 South. 198, 35 L. R. A. (N. S.) 491. This court has heretofore repeatedly refused to follow Mr. Pomeroy on this subject.

[24, 25] Inadequacy of legal remedies is the foundation and indispensable requisite for the intervention of chancery to enjoin trespasses. This, because legal remedies have been devised to redress such wrongs, and if these remedies are adequate equity has no right to intervene. The bill therefore must aver facts which show the legal remedies to be inadequate. This may be done by alleging facts which show that the wrong is destructive of the substance of the estate, or that the damages are incapable of ascertainment in a court of law, or of compensation in money value; or that the defendant is insolvent and cannot be made to respond in damages; or that the wrong is vexatiously persisted in, in spite of repeated verdicts, and that to redress it in courts of law would require a multiplicity of actions at law; or probably other reasons not enumerated above. Of course it is not objectionable if the bill alleges facts showing two or more of these grounds or reasons for equity intervention; but facts must be averred which show one or more of these enumerated, or other, equitable grounds, showing the remedy at law to be inadequate. Mere conclusions of the pleader, without allegations of facts to support the conclusion, are not sufficient, as we have shown.

[26] Courts of equity do not, as a rule, intervene merely to test legal title, especially by injunction as a substitute for ejectment; but it does not follow that legal titles will never be determined in equity. In some cases where equity acquires jurisdiction for equitable purposes, it may be necessary, in order to do complete justice, to determine legal titles. Hence the general rule that equity will not enjoin trespass to land, where the legal title is in dispute, is subject to exceptions and limitations. If the injury or damages threatened are shown to be irreparable unless equity intervenes, then it will, in such cases, enjoin the trespass, although the legal title is in dispute. It will also intervene in certain cases to maintain the status quo until the disputed legal title

can be determined in a court of law, or even in equity, if facts are averred to bring the case within equitable jurisdiction for such purposes. 14 Rul. Cas. Law, 451.

The true doctrine, with its history and its progress, was announced by Stone, J., quoted above, and by Field, J., in the case of Erhardt v. Boaro, 113 U. S. 537, 5 Sup. Ct. 565, 28 L. Ed. 1116, where it is thus stated:

"It was formerly the doctrine of equity, in cases of alleged trespass on land, not to restrain the use and enjoyment of the premises by the defendant when the title was in dispute, but to leave the complaining party to his remedy at law. A controversy as to the title was deemed sufficient to exclude the jurisdiction of the court. In Pillsworth v. Hopton, 6 Vesey, 51, which was before Lord Eldon in 1801, he is reported to have said that he remembered being told in early life from the bench, 'that if the plaintiff filed a bill for an account and an injunction to restrain waste, stating that the defendant claimed by a title adverse to his, he stated himself out of court as to the injunction.' This doctrine has been greatly modified in modern times, and it is now a common practice in cases where irremediable mischief is being done or threatened, going to the destruction of the substance of the estate, such as the extracting of ores from a mine, or the cutting down of timber, or the removal of coal, to issue an injunction, though the title to the premises be in litigation. The authority of the court is exercised, in such cases, through its preventive writ, to preserve the property from destruction pending legal proceedings for the determination of the title. Jerome v. Ross, 7 Johns. Ch. 315, 332 [11 Am. Dec. 484]; Le Roy v. Wright, 4 Sawyer, 530, 535 [Fed. Cas. No. 8,273]."

This same doctrine and history is stated by this court in the case of Lyon v. Hunt, 11 Ala. 295, 46 Am. Dec. 216. The authorities up to that date were there reviewed by Collier, C. J., and by Mr. Freeman in a note to the report of the case in 46 Am. Dec. 216. This case has been often followed, and its language quoted, and never departed from. In the case of Wadsworth v. Goree, 96 Ala. 230, 10 South. 849, the state and federal cases above referred to were cited and followed, and it was there said:

"If the wrong charged be only a naked trespass, containing no elements of damage which cannot be redressed· in an action at law, then this bill is without equity, and the demurrer should have been sustained. High on Injunctions, §§ 713, 728; Thomas v. James, 32 Ala. 723; Brooks v. Diaz, 35 Ala. 599; Burnett v. Craig, 30 Ala. 135 [68 Am. Dec. 115]; Attaquin v. Fish, 5 Metc. (Miss.) 140. To justify injunction in such case, there must be something special in the case made, which a court of law cannot adequately redress. 3 Pom. Eq. § 1347; High on Injunctions, §§ 673, 699, 713;. Lyon v. Hunt, 11 Ala. 295, 306 [46 Am. Dec. 216]. The case made by the bill, as we have seen, is, that complainant is a mill owner, that the lands are in the vicinity of his mill, that there is an abundance of timber on the lands suitable for sawlogs, and that the chief value of the land consists in its abundance of timber that may be sawn into lumber. The inference from the averments of the bill is irresistible that in acquiring said timber land complainant's controlling motive and purpose were to obtain the timber that he might convert it into lumber. This charge necessarily implies the loss to him of the use and enjoyment of his mill and its

machinery, and all the profit to be derived from converting the timber into lumber."

So there is no doubt that the relief prayed in this bill can be awarded; but the trouble is the facts to authorize it are not alleged. The conclusions are alleged, but the facts which are issuable and which would support or justify the conclusions are not alleged. The bill is too general in most of its averments; it is not specific as to many facts and issues material to warrant the relief. If the facts exist which would warrant the relief, it does seem that they could be averred with more certainty and less generality, and not, as mere conclusions of the pleader.

[27] The averments as for discovery are too general, vague, and indefinite. It is by no means made certain that complainant could not obtain the information desired, without a discovery. No effort to so obtain it, nor any excuse for not making the effort, is alleged. Likewise, the allegations as to complainant's ownership, or the rights of action as for trespasses upon the land in question before complainant acquired the lands, are but conclusions of the pleader.

The same is true as to the defendant corporation's liability to the complainant as for trespasses upon the land in question, by other third parties; the allegations touching this phase of the case are mere suppositions or conclusions of the pleader. So, as to the particular lands trespassed upon, and as to the character, nature, and extent of the trespasses, the averments are entirely too general.

It results that the chancellor properly sustained the demurrer to the substituted bill.

Affirmed.

ANDERSON, C. J., and SOMERVILLE and THOMAS, JJ., concur.

SOMERVILLE and THOMAS, JJ. (concurring). We do not understand that any of the principles or conclusions expressed in the foregoing opinion are in conflict with the decision of this court as stated in the opinion of Sayre, J., in the recent case of Tidwell v. Hitt Lumber Company, 198 Ala. 236, 73 South. 486, from which we do not wish to recede in any particular.