(88 South. 578)

CAMP v. CONNER et al.   (8 Div. 284.)

(Supreme Court of Alabama.   April 7, 1921.)

Injunction ⬅️118(4)—Bill against repeated trespasses showed equity.

Bill by the joint owner of land against an insolvent trespasser and others to enjoin repeated acts begun by a wrongful seizure of the land *held* to show equity for injunction of such trespass and restoration of possession of the land to complainants.

Appeal from Circuit Court, Colbert County; C. P. Almon, Judge.

Bill by Mary H. Conner and another against Ed. Camp and others to enjoin trespass, for a receiver, and to reclaim possession of property. From a decree granting the relief prayed, respondent Camp appeals. Affirmed.

A. A. Williams, of Florence, for appellant.

Court erred in overruling the demurrers of the defendant Camp. 16 Cyc. 52; 92 Ala. 490, 9 South. 262; 148 Ala. 343, 42 South. 564; 70 South. 554, 70 Fla. 514; 182 Ala. 303, 62 South. 519; 20 South. 506, 111 Ala. 656; 126 Ala. 155, 27 South. 971; 127 Ala. 78, 28 South. 698; 99 Ala. 474, 13 South. 43; 108 Ala. 550, 18 South. 526; 104 Ala. 625, 16 South. 579. On these authorities, court erred in the decree rendered.

Mitchell & Hughston, of Florence, for appellees.

The bill clearly contains equity, and the lower court was not in error in any of its decrees. 86 Ala. 483, 6 South. 34; 92 Ala. 484, 9 South. 262; 104 Ala. 130, 16 South. 131; 201 Ala. 150, 77 South. 574.

MILLER, J. Mary H. Conner and Jacqueline P. Thompson, complainants, file this bill against Ed. Camp and Reid & Lowe, defendants, asking for an injunction to prevent continued trespass and irreparable injury to land and the appointment of a receiver to take charge of the property and collect the rents and hold it for distribution under the orders of the court.

The cause was submitted on application for injunction and appointment of a receiver to the court on the bill of complaint, answer of defendant Ed. Camp, and the written agreement of complainants and Reid and Lowe, and ex parte affidavits of witnesses. The court thereon appointed a receiver. There was no necessity to issue the injunction, as the defendants Reid and Lowe agreed in writing with complainants that they claimed no title or interest in the land, except that they had rented or leased it from Ed. Camp, that they would commit no more waste and cut down no more trees unnecessarily, and would abide by the orders of the court and pay the rent they had agreed to pay to Ed. Camp to the receiver under the orders of the court.

This decree of the court is not assigned as error. The cause was submitted for final decree on bill of complaint, answer of defendant Ed. Camp, and testimony as noted by the register.

The court overruled the demurrers to the bill, and held that there was equity therein; that the complainants were entitled to the relief prayed for; they owned the land as tenants in common or joint owners; the defendants were trespassers thereon; and the receiver should pay the rents collected to complainants.

Overruling the demurrers, granting the relief, and declaring the complainants owners of the land by the decree of the court are assigned as errors by Ed. Camp, the defendant.

---

⬅️For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

The defendant Ed. Camp complains by demurrer that the bill does not aver facts showing complainants own the land; that they have an adequate remedy at law; that it charges fraud, but sets out no facts to base it on; that the facts are insufficient to show that Ed. Camp is insolvent; and that there is no equity therein.

The bill states and avers that complainants are joint owners and tenants in common of about three acres of land, particularly describing and bounding it; that "they have been in undisputed possession, ownership, and control of it for more than 40 years, having warranty deed from the original owners, and exclusive possession thereunder" until the defendants "forcibly and unlawfully" went into possession of it; that it was inclosed by a wire fence; that complainants used and removed surplus timber therefrom, and had a rock quarry thereon; paid the taxes and exercised exclusive possession and ownership of it, until the defendant Ed. Camp unlawfully broke down the fences on the land and entered on it without any license or leave of any kind from the complainants, and without any title or right of any kind to the land, and proceeded to lease or license it to Reid and Lowe and others "on the false and fraudulent pretenses that he owned said lands"; that this land was in great demand at the time; the United States government was investing millions in the nitrate plant near there; people were coming and going, hunting employment; the land was situated on the public highway, fronting on the river and bounded on one side by the railroad right of way; it was a beautiful location for residences, with many large and handsome shade trees thereon; that Reid and Lowe had contracted to repair the bridge and do work for the Southern Railway Company at this land; that from 40 to 100 temporary tents and structures for their laborers to live in were being erected on the land, the shade trees being cut down and destroyed by them, and they "are constructing on the land switches, turnouts, tracks, and numerous and various kinds of works in connection with their contract to repair the railway bridge at this point," and "they are cutting down shade trees and engaged in digging, excavating, on said lands to the destruction and permanent impairment of the great natural beauty of said lands and to the permanent and irreparable injury of the same"; that "they have refused to vacate on demand of complainants, and have completely ousted complainants from said lands, and rendered it impossible for them to protect their property from destruction, and deprived them of the opportunity to realize the benefits of the developments taking place." The bill also alleges that various persons, coming and going, are temporarily occupying these tents and structures under some agreement with Ed. Camp, and he is collecting pay or rent therefor; that "Ed. Camp is insolvent; that he is a man of no means and could not respond in damages for the injury to said property;" and "that the buildings are temporary shacks for which he collects large sums of money without any right or pretense of right." They are all occupied by different persons. The laborers occupying them come and go, temporary tenants. It would take a multiplicity of suits at law to clear said land of trespassers under Ed. Camp, and the result would give no adequate relief.

From the allegations of the bill the legal title is not in dispute. It is clearly averred that complainants are owners of the land, and that the defendants are trespassers. When the injuries to the land are irreparable and continuous, when the complainants are the owners of the land, and whether the defendant is solvent or insolvent and a trespasser, a court of equity will intervene to prevent the irreparable injuries, particularly so when the bill also avers facts showing the defendant has forcibly and unlawfully taken possession of the land for fraudulent purposes. In the twenty-sixth headnote of Cullman Property Co. v. H. H. Hitt Lbr. Co., 201 Ala. 157, 77 South. 581, this court says:

"Courts of equity do not, as a rule, intervene merely to test legal title, especially by injunction as a substitute for ejectment; but it does not follow that legal titles will never be determined in equity. In some cases where equity acquires jurisdiction for equitable purposes, it may be necessary, in order to do complete justice, to determine legal titles. Hence the general rule that equity will not enjoin trespass to land, where the legal title is in dispute, is subject to exceptions and limitations. If the injury or damages threatened are shown to be irreparable unless equity intervenes, then it will, in such cases, enjoin the trespass, although the legal title is in dispute. It will also intervene in certain cases to maintain the status quo until the disputed legal title can be determined in a court of law, or even in equity, if facts are averred to bring the case within equitable jurisdiction for such purposes."

The court below did not err in overruling the demurrers. Ashurst v. McKenzie, 92 Ala. 484, 9 South. 262; Cullman Property Co. v. Hitt Lbr. Co., 201 Ala. 150, 77 South. 574; Lyon v. Hunt, 11 Ala. 295, 46 Am. Dec. 216; Sullivan v. Rabb, 86 Ala. 433, 5 South. 746.

The undisputed evidence in this case showed that complainants owned the east half of lot 45, which is described in the bill as bounded on one side by the river, located in the town of South Florence, and their title thereto was traced practically from the United States through various owners to them, and possession of it by them for 35 to 40 years. The evidence of some tended to show that this lot did not extend quite to

the river, while the testimony of others was to the effect that it was bounded on one side by the river. The testimony, however, showed that the complainants have had possession of the lot and the land there up to the river exclusively and continuously for 35 or 40 years. There was a rock quarry thereon at one time. The evidence also showed that Ed. Camp had very little property; that his assessment for 1918 was $50, not including his assessment of land in controversy. It was assessed by him that year at $360. The land in controversy, east half of lot 45, for the past 12 years was assessed by Thompson and Conner, as shown by the books of the tax assessor.

The bill of complaint in this cause was filed August 28, 1918. A warranty deed from Henry Pridgeon, a single man, to E. F. Camp, dated October 31, 1918, was introduced in evidence. It conveyed six acres of land bounded on the east by the Southern Railway right of way, north by the Tennessee river, west by land of J. C. Harris, and south by lot 45, in South Florence, Ala. The recited consideration of this deed was $1.

Henry Pridgeon did not testify in this case. There was no evidence that he ever saw this land. There was no evidence that he was ever in possession of the land. There was no evidence from whom he purchased it, if from anybody. The defendant Ed. Camp did not testify in this case. This deed of Pridgeon to Camp also recites:

"This deed is executed to replace a deed which has been lost or destroyed, executed by the grantor to the grantee on or about the 1st day of October, 1916."

No one testified that they knew Henry Pridgeon. Several witnesses testified that they did not know Henry Pridgeon, had never heard of him, and that he had never been in possession of this land. This warranty deed being made for $1 consideration, executed and filed for record more than 30 days after this suit was commenced, and neither the grantor nor the grantee testifying, makes it appear to the court, from this and other evidence in this cause, that it was designedly done for the purpose of trying to show that the defendant Ed. Camp had some right to enter upon and take possession of this land from the complainants. It has the badge of fraud on its face.

We have read carefully all the evidence in the transcript. The allegations of the bill are clearly and conclusively established by the evidence. It appears therefrom to us that the court below was right when it held there was equity in the bill of complaint, and that the complainants owned as joint owners or tenants in common the land described therein; the defendants were trespassers thereon, with no interest in or right to the land; the receiver should pay to the complainants all moneys collected by him for rents; and that possession of the land should be restored to the complainants. Cullman Property Co. v. Hitt Lbr. Co., 201 Ala. 150, 77 South. 574; Lyon v. Hunt, 11 Ala. 295, 46 Am. Dec. 216; 16 Cyc. 55, headnotes 30–33; Sullivan v. Rabb, 86 Ala. 433, 5 South. 746.

Affirmed.

ANDERSON, C. J., and SAYRE and GARD-NER, JJ., concur.